A99A0150. GURR v. THE STATE.
A99A0151. MILLER v. THE STATE.
(516 SE2d 553)

Judge Harold R. Banke.

Concluding that Dimple Gurr and her brother Vanderbilt Miller jointly possessed 248.5 grams of cocaine found in her backyard, a jury found each guilty of trafficking in cocaine (OCGA § 16-13-31 (a)). The jury also found Miller guilty of tampering with evidence (OCGA § 16-10-94). Challenged on appeal are (i) the sufficiency of the evidence, (ii) the admission of similar transactions, (iii) the State's use of a witness' testimony that contradicted his pre-trial affidavit, (iv) the dismissal of a juror who was contacted regarding the case during an overnight break in the deliberations, and (v) the effectiveness of trial counsel.

1. Viewing the evidence favorable to the verdict, could any rational trier of fact have found the essential elements of the crimes beyond a reasonable doubt? See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(a) *Gurr's trafficking in cocaine*. Any person knowingly in possession of 28 grams or more of cocaine is guilty of trafficking in cocaine. OCGA § 16-13-31 (a) (1). When contraband is found on residential property, an inference may arise that the occupying owner or tenant is the knowing possessor of such. *Shreve v. State*, 172 Ga. App. 190, 191 (322 SE2d 362) (1984). Gurr and her husband were the only occupants of the residence where an officer witnessed an informant enter with $150 in cash and return with a corresponding amount of

cocaine. Officers returned the next day with a search warrant and found 248.5 grams of cocaine in a dirty green latex kitchen glove buried in a hole in the fenced-in backyard. Located behind a shed near a doghouse, the hole was under the fence with access only from the backyard of Gurr. Similar dirty gloves were found in the shed and master bedroom of the residence. Vantonio Cook testified that when he had previously sold cocaine for Gurr and Miller, he observed Gurr retrieve the cocaine from a hole in the backyard near a doghouse.

The evidence sufficed to sustain Gurr's conviction of trafficking. More than mere occupancy of the residence was shown, rendering inapplicable the "equal access" doctrine. *Barfield v. State*, 160 Ga. App. 228, 230 (3) (286 SE2d 516) (1981). Moreover, for the equal access rule to rebut the inference of possession of contraband, affirmative evidence must show that a person other than the defendant or a member of his immediate household had equal access to the specific location where the contraband was found. *Cochran v. State*, 190 Ga. App. 884, 885-886 (1) (380 SE2d 319) (1989); *Mobley v. State*, 190 Ga. App. 771, 772 (1) (380 SE2d 290) (1989). No such evidence was shown, for the only other possible person, the housekeeper, told police he was hired simply to clean the house, not maintain the backyard.

(b) *Miller's trafficking in cocaine.* The evidence also sustained a trafficking conviction against Miller. Cook testified that when he had previously sold drugs for Miller, he had gone to Gurr's residence to obtain the drugs, which drugs he witnessed were kept in a hole in the backyard. He testified that to differentiate between ownership of the cocaine, cocaine belonging to Vanderbilt Miller was marked with a "V." Over 238 grams of the cocaine found in the green glove were in a paper sack marked with a "V." Cook had previously seen Miller with cocaine, and Miller later threatened and pressured Cook to change his testimony about Miller's role in the scheme.

(c) *Miller's tampering with evidence.* OCGA § 16-10-94 defines tampering with evidence as knowingly altering physical evidence with the intent to obstruct the prosecution of a crime. On the day of the search, Miller told Gurr's attorney cocaine had been found in a hole along the back fence of the Gurr residence. The attorney asked him to take photographs of the hole. The following morning Miller brought a set of photographs to the attorney that were presented as evidence at the probable cause hearing that day. These photos showed a new hole on the neighbor's side of the fence that led to the drug cache. The photos taken by the police of the neighbor's side of the fence the day before showed no such hole, but showed only an access hole from Gurr's side of the fence.

The evidence sustained the conviction. A jury could have inferred that when Miller went to take the photographs, he dug a

new hole on the neighbor's side of the fence to give the impression that the neighbor had equal access to the cache. See *Parrish v. State*, 182 Ga. App. 247, 250 (5) (355 SE2d 682) (1987). That Gurr's dogs dug holes on Gurr's side of the fence has nothing to do with holes dug from the neighbor's side. Moreover, the evidence showed the digger of the new hole pulled leaves and vines back, cleared the area out, moved the fresh dirt, and dug a new hole directly connecting to the drug cache, which likely would not have been the work of an animal.

2. Gurr and Miller claim the court erred in admitting the similar transaction testimony because the State failed to make the affirmative showings required by *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). But defendants failed to object to the testimony at trial, thereby waiving this issue. *McClarity v. State*, 234 Ga. App. 348, 349-350 (2) (506 SE2d 392) (1998).

3. Gurr and Miller contend they were denied their right to a fair trial because the State's evidence included Cook's testimony and hearsay statements. They point to Cook's contradicting pre-trial affidavits: in the first Cook denied that Gurr and Miller had ever been involved in drugs and in the other (and at trial) he swore that both had trafficked in drugs. He explained that he signed the first affidavit because Miller threatened him. Citing OCGA § 24-9-85 (b), they argue that Cook's false swearing required the jury to disregard his uncorroborated testimony entirely.

But OCGA § 24-9-85 (b) requires that the false swearing be wilful. Evidence that Cook gave in to coercive threats allowed the jury to find he did not act wilfully, but involuntarily. *Montgomery v. State*, 224 Ga. 845, 848 (1) (165 SE2d 145) (1968); *Johnson v. State*, 188 Ga. App. 499, 501 (4) (373 SE2d 284) (1988).

Defendants' arguments regarding hearsay statements are waived because they did not object to the statements at trial. *Sears v. State*, 268 Ga. 759, 765 (13) (493 SE2d 180) (1997).

4. Gurr and Miller claim the court erred in dismissing a juror who had been contacted by his former student during the overnight break in the deliberations. During the abbreviated conversation, the student commented negatively on the court proceedings.

Based on the conduct of the audience in the courtroom during the trial, the judge was particularly concerned that an effort would be made to contact the jurors. He gave a specific warning to the jurors before they left for their overnight break that if anyone tried to contact a juror, that juror should inform the court, and the court would then excuse that juror. When the juror told the court the next morning of the contact, the court replaced the juror with an alternate.

*Darden v. State*, 212 Ga. App. 345, 347 (4) (441 SE2d 816) (1994), held:

Under OCGA § 15-12-172, the trial court has discretion to discharge a juror and replace him or her with an alternate at any time, and we will not reverse as long as the court's exercise of discretion has a sound legal basis. [Cits.]

Replacing jurors who are contacted by persons interested in the case is not an abuse of discretion, for such preserves the integrity of the judicial process. *Miller v. State*, 261 Ga. 679, 680 (6) (410 SE2d 101) (1991); *Worthy v. State*, 223 Ga. App. 612, 613 (1) (478 SE2d 421) (1996).

5. To prevail on their ineffective assistance of counsel claim, Gurr and Miller were required to show that counsel's performances were deficient and that these deficient performances prejudiced their defenses. *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

They contend their two attorneys failed to adequately prepare for trial by failing to interview various potential witnesses. One such witness was Clarence Clark, who was interviewed. Both attorneys, experienced in criminal defense, testified that (i) they extensively prepared, (ii) all material witnesses were interviewed, and (iii) the decision not to call witnesses was strategic and based on discussions with their clients. See *Johnson v. State*, 214 Ga. App. 77, 79 (1) (447 SE2d 74) (1994). "Declining to present evidence (other than the defendant's own testimony) so as to preserve the final word in closing argument is a well-recognized trial tactic." *Sewell v. State*, 229 Ga. App. 685, 689 (1) (c) (494 SE2d 512) (1997). Because evidence supported a finding of effective assistance, the court's denial of a new trial was not clearly erroneous. Id. at 687 (1).

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED APRIL 20, 1999 —
RECONSIDERATION DENIED MAY 6, 1999 — CERT. APPLIED FOR.

*Tony L. Axam*, for appellants.

*Charles H. Weston, District Attorney, Kimberly S. Schwartz, Dorothy A. Vinson, Assistant District Attorneys*, for appellee.