## A07A0568. STROUD v. THE STATE.
(648 SE2d 476)

PHIPPS, Judge.

Montrae Perez Stroud was charged with numerous drug offenses after law enforcement officers searched and found drugs in his vehicle. Stroud's motion to suppress the drug evidence was denied. After a bench trial, Stroud was convicted of possession of marijuana with the intent to distribute, possession of methamphetamine with the intent to distribute, and two counts of cocaine trafficking. On appeal, Stroud contends that the trial court erred by denying his suppression motion and that the state failed to establish the purity of the cocaine and the intent required for the methamphetamine offense. Because Stroud has demonstrated no merit in these contentions, we affirm.

1. Stroud contends that the trial court should have suppressed the drug evidence discovered in his vehicle, arguing that the warrantless search of his vehicle was not supported by probable cause.

Probable cause to search a vehicle exists when the facts and circumstances before the officer(s) are such as would lead a reasonably discreet and prudent person to believe that contents of the vehicle offend the law.[1] "The test of probable cause requires merely a probability — less than a certainty but more than a mere suspicion or possibility. A suspicion or strong reason to suspect is an insufficient foundation for a finding of probable cause."[2]

---

[13] *Wingfield v. State*, 226 Ga. App. 448 (1) (486 SE2d 676) (1997).
[1] *Brown v. State*, 269 Ga. 830, 831 (2) (504 SE2d 443) (1998).
[2] Id. at 831-832 (2) (citation and punctuation omitted).

When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the trial court's findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them.[3]

An appellate court determining whether a search was lawful may consider all relevant evidence of record, including that adduced at a pretrial suppression hearing and at trial.[4]

A confidential informant (CI) working with a county narcotics squad arranged for a narcotics agent to purchase undercover eight ounces of cocaine through Garie Davis. On July 15, 2004, the CI drove with the undercover officer to a prearranged location within a residential subdivision. Davis met them on foot, and the undercover agent showed Davis a quantity of money. Davis made several telephone calls, reported to the CI and the undercover agent numerous times that the cocaine was "on its way," and looked repeatedly toward the subdivision entrance. The agent testified that he inferred from Davis's reports and behavior that "there was going to be a vehicle arriving with the cocaine." The agent began watching for vehicles entering the subdivision. About 20 to 30 minutes after Davis arrived, the agent noted that a large black sports utility vehicle (SUV) with "very black tinted out windows" had parked nearby. The undercover agent testified that "[the SUV] stay[ed] parked, it wasn't like it was stopping at a stop sign and then moving on. The vehicle, when I observed it, was stationary." The undercover agent further recalled that shortly after Davis saw the SUV, he (Davis) announced he was leaving to get the cocaine and would call them when he had it. When Davis walked away, the undercover agent realized that the SUV was gone and alerted an assisting narcotics agent stationed near the subdivision entrance that he believed that Davis was walking to meet the supplier of the cocaine and to be on the lookout for a possibly involved black SUV.

Through a transmitting device concealed from Davis's view, the assisting narcotics agent had been monitoring the conversations between Davis and the CI. And positioned near the subdivision entrance, he had been monitoring traffic entering and exiting the

---

[3] *Soilberry v. State*, 282 Ga. App. 161 (637 SE2d 861) (2006) (citation omitted).
[4] *Barnett v. State*, 204 Ga. App. 491, 492 (420 SE2d 43) (1992).

subdivision. He advised the undercover agent about one entering vehicle that had already aroused his suspicion, a black Ford Expedition, a type of SUV, with darkly tinted windows and "flashy, expensive" tires and wheels. This agent further testified that he had become suspicious that the cocaine would be sold from that SUV because "a lot of times the dealer will put a lot of his money into a vehicle with flashy wheels, tires, dark tinted windows so nobody [can] see who [is] inside." This agent also had observed Davis walking in the direction the SUV had traveled. Because this agent never saw the SUV exit the subdivision, he related his suspicion that the drug supplier was in that SUV to other assisting narcotics agents staged throughout the subdivision.

About 15 minutes after Davis walked away from the CI and undercover agent, Davis contacted the CI by cell phone for the two to meet him "down the road." When they did so, Davis entered their vehicle and showed the undercover agent a substance that appeared to be cocaine; and the undercover agent took possession of the substance and gave a takedown signal. Assisting narcotics agents awaiting the signal converged upon the scene, arresting Davis and seizing the suspected cocaine.

The narcotics agent who had been stationed at the subdivision entrance knew that the black SUV still had not exited the subdivision and thus directed assisting law enforcement officers to search the subdivision for such an SUV. Two assisting officers found one, backed into a residential driveway, parked at the edge of the street. The side windows were so darkly tinted that the officers could not see through them. They learned from a woman inside the residence that she knew nothing about the SUV nor its driver. One of the officers then gazed through the front windshield and discerned a man reclined in the driver's seat, "with the seat leaned back so as to be low enough where his head would not be above the level of the window where you could see in." The officer testified that he determined that the man was neither sleeping nor resting, but attempting to hide, because the man's eyes were "wide open" and the man seemed startled when he realized he had been detected. The officer ordered the man, later identified as Stroud, out of the SUV. Stroud complied and was arrested. No other occupant was in the SUV. A search of Stroud's SUV yielded marijuana, methamphetamine, cocaine, scales, and currency totaling approximately $16,000.

Probable cause may rest upon the collective knowledge of the police where, as here, there is some degree of communication between them.[5] Construing the evidence, and all reasonable inferences to be

---

[5] *Goodman v. State*, 255 Ga. 226, 229 (13) (336 SE2d 757) (1985).

drawn therefrom, in the light to uphold the trial court's determination, we conclude that the totality of the circumstances known to the law enforcement officers participating in the drug investigation supplied probable cause that contraband was inside the SUV.[6] Thus, the trial court did not err in denying Stroud's motion to suppress drug evidence seized during the search of this vehicle.

2. Stroud contends there was insufficient proof of the purity of the cocaine seized in this case,[7] asserting that the state "relied completely on the crime lab reports which were admitted into evidence by stipulation." One such lab report concerned the substance Davis testified that he retrieved from Stroud and gave to the CI, which substance underlay one of the two cocaine trafficking convictions. In its "Results and Conclusions" section, such report stated that the substance was "positive for cocaine in the sample tested, Schedule II, net weight of total sample: 224.03 grams (+/- 0.03 grams) Quantitation = 84.4% (+/- 3.6%)." The other lab report concerned the suspected cocaine seized from Stroud's vehicle, which substance underlay the second conviction for cocaine trafficking. In its "Results and Conclusions" section, such report stated that the substance was "positive for cocaine in the sample tested, Schedule II, net weight of total sample: 737.29 grams (+/- 0.05 grams) QUANTITATION = 83.2% (+/- 3.5%)." Stroud argues specifically that the state failed to prove purity because there was no testimony defining "quantitation" or otherwise establishing that such word as used in the reports related in any way to drug purity.

Although the lab reports were less than explicit on the element of purity, the factfinder was entitled to draw any reasonable inference from the evidence presented.[8] An appellate court views the evidence in the light most favorable to the conviction and determines only if the evidence was sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the charged offense.[9] So viewed, we conclude that the lab reports could reasonably have been interpreted so as to authorize the trial judge to find beyond a reasonable doubt that the substances described therein were of a "purity of 10 percent or more of cocaine."[10]

---

[6] See id.; *Lopez v. State*, 267 Ga. App. 532, 537 (5) (601 SE2d 116) (2004).

[7] OCGA § 16-13-31 (a) (1).

[8] *Pledger v. State*, 193 Ga. App. 588, 590 (2) (c) (388 SE2d 425) (1989).

[9] *Nelson v. State*, 274 Ga. App. 585 (618 SE2d 192) (2005), citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[10] OCGA § 16-13-31 (a) (1); see *Lombardo v. State*, 187 Ga. App. 440, 442 (5) (370 SE2d 503) (1988) (rejecting contention that evidence of purity of cocaine was insufficient for cocaine trafficking conviction, where a lab report tendered into evidence pursuant to the parties' stipulation provided that "[t]he 10 pounds 15.8 ounces of powder is positive for cocaine,

3. Stroud challenges the sufficiency of the evidence supporting his conviction for possessing methamphetamine with the intent to distribute,[11] arguing that there was no evidence of the requisite intent. Stroud points to evidence that police found approximately 1.5 to 2.5 grams of the drug, which he claims was "a small amount of methamphetamine," and he relies on the prosecuting attorney's remark during closing concerning the count of possession of methamphetamine with the intent to distribute:

> I think the evidence is sufficient to find the defendant guilty of possession of methamphetamine. I think the quantity alleged and the fact that there was no separate packaging or any distribution with the methamphetamine would lend the Court to be able to make a factual determination that it was more a — it was a possession of methamphetamine case.

Intent is a question of fact to be determined upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted.[12] Closing argument is not evidence to be considered by the factfinder.[13]

At trial, the parties stipulated to the evidence adduced at the suppression motion hearing. In addition, Davis testified that he had asked Stroud to supply the cocaine requested by the CI and that Stroud had agreed to provide the drug through him (Davis) on the day in question. When Stroud arrived at the subdivision, Davis got into his SUV, and Stroud drove to and parked in a residential driveway. Davis testified that Stroud grabbed from the back seat an "athletic" bag and took out of it what he believed to be a "block" of cocaine, from which Stroud separated an amount, weighed it on scales, placed the weighed amount in a sandwich bag, handed the sandwich bag to him, and then put the residual "block" back in the "athletic" bag. Davis testified that before he exited Stroud's SUV, Stroud informed him that he had "other drugs . . . if they wanted anything." According to Davis, Stroud pulled out of the same "athletic" bag a substance that appeared to him to be marijuana packaged in numerous sandwich bags and said to him, "I got this and ice, pills."

A law enforcement officer testified that the cocaine seized from Stroud's vehicle was in "block" form and stashed in a duffel bag

---

Schedule II. Quantitation of the powder shows it to contain 9 pounds 1.9 ounces of cocaine") (punctuation omitted); *Jackson v. State*, 157 Ga. App. 604 (1) (278 SE2d 5) (1981).

[11] OCGA § 16-13-30 (b).

[12] OCGA § 16-2-6.

[13] *Hazelrigs v. State*, 255 Ga. App. 784, 785 (1) (567 SE2d 79) (2002).

located on the floorboard behind the driver's seat. He testified that the methamphetamine was discovered in that bag.

The parties also stipulated to a similar transaction, with which the state sought to show, among other things, Stroud's intent to distribute illegal narcotics. Eighteen months after the incident underlying the instant convictions, Stroud agreed to provide crack cocaine to a CI working with law enforcement agents. When Stroud arrived at the prearranged location in the same SUV that he had driven to the prearranged location to meet Davis, law enforcement officers attempted to stop him. Stroud tried unsuccessfully to drive away. A drug dog alerted on his vehicle; and after Stroud was removed from the SUV, crack cocaine and approximately $2,900 were found in the vehicle.

"Upon a finding of guilt following a bench trial, the presumption of innocence no longer applies, and on appeal, the appellate court construes the evidence in favor of the judge's findings of fact."[14] So construed, the evidence authorized a finding that Stroud intended to sell the narcotics that he had stashed in the bag with the cocaine, which included the methamphetamine.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED JUNE 25, 2007.

*Whitmer & Law, George H. Law III*, for appellant.
*Lee Darragh, District Attorney, Alison W. Toller, Assistant District Attorney*, for appellee.

---

[14] *Burchett v. State*, 283 Ga. App. 271 (641 SE2d 262) (2007); see *Jackson*, supra.