## A08A1720. XIONG v. THE STATE.
(673 SE2d 86)

ADAMS, Judge.

Seng Xiong appeals from the denial of his motion for new trial. He contends the trial court erred by denying a motion to suppress, by improperly charging the jury, and by denying his motion for new trial on the four counts on which he was convicted.

1. With regard to the motion to suppress, the evidence shows that on September 8, 2003, officers responded to an anonymous tip that a stolen car was located at Xiong's residence. From the road, an officer was able to see a car on jack-stands in the carport. A uniformed officer knocked on the door, and Xiong answered and consented to a search of the carport. In the carport, the officer saw the shell of a car that had been stripped of almost all of its interior parts. In addition, the vehicle identification number (VIN) plate was missing, the car had no license tag, the side windows were missing or broken, and car parts were all over the property. The officer checked for a VIN under the hood and found it engraved on the car frame. A computer check showed the car had been stolen. The officer then placed Xiong under arrest for possession of stolen property, and a search warrant was obtained. In the ensuing search, officers discovered automobile parts inside and outside the home, as well as illegal drugs in a bedroom.

The trial court did not err by denying the motion to suppress. "Where a police officer enters upon private property only to the extent of knocking on outer doors, the Fourth Amendment is not violated [because the] officer is merely taking the same route as would any guest." *State v. Zackery*, 193 Ga. App. 319 (387 SE2d 606) (1989). See also *Bryant v. State*, 288 Ga. App. 863 (655 SE2d 707) (2007). After answering the door, Xiong freely and voluntarily consented to the search that led to discovery of the stolen car and, eventually, the illegal drugs. See *Pledger v. State*, 257 Ga. App. 794, 799 (572 SE2d 348) (2002). The fact that the officer was acting on second-hand knowledge of an anonymous tip is immaterial under these circumstances.

2. Xiong was convicted of theft by receiving the stolen car, operating a chop shop, possession of methamphetamine with intent to distribute, and possession of marijuana. He contends the evidence

was insufficient to support the convictions.

In addition to most, but not all, of the facts set forth above, the evidence at trial revealed the following: in July 2003, the car had been stolen from a parking lot; Xiong admitted that he lived at the home along with his wife and three children; the carport was partially enclosed on the back and right side, but not on the front, by cardboard or plywood; the officer could not find a VIN "where I normally locate them," but he did not testify that the VIN plate had been removed or that the license plate was missing; he found the VIN on the firewall under the hood after receiving permission from Xiong to look there; Xiong told the officers that his cousin had brought the car to the home; photographs of the car and the widely strewn parts were introduced into evidence; several car parts, a firearm, and a box containing 14 bags of methamphetamine with green, dollar signs on them, weighing over 28 grams in total, were found in the master bedroom; adult male and female clothes were found in the master bedroom closet, together with a handgun; more car parts and a car window that fit the stripped car were found in the attic; car parts were found in the kitchen, living room and in another bedroom; a small amount of marijuana was found in the kitchen in a smokeless tobacco container; clear plastic baggies with dollar sign markings on them were found in the living room; and electronic scales were also found in the home. In addition, the officer found a notebook with handwriting, as well as a road atlas and documents pertaining to car repairs. The handwriting included references to people named "Dizzy" and "Kiwi" and to handling "ice" and "bags" in exchange for money. An officer testified that "ice" is a term for crystal methamphetamine. A .22 caliber pistol and bullets were found, as well as a .38 caliber semiautomatic handgun and another handgun. Two of the guns were found under the cushions of the sofa in the living room.

Yiling Yang, a recent friend or acquaintance of Xiong, testified that Xiong's cousin "Dizzy" lived at the residence. Yang had seen Dizzy at the home every time he visited, which amounted to five or six times over a period of months. He had seen Dizzy there about two weeks before Xiong's arrest. Yang, who works on cars himself, testified that "he's always working on cars"; the context of the question and answer allowed the jury to infer that Yang was referring to Xiong. Xiong admitted as much in his brief.

Xiong's wife of seven years, Jennifer Thao, testified that the family and Xiong's cousin Tang "Dizzy" Vang moved into the home in June 2003. Unlike Xiong and Thao, who both had full time jobs, Vang was unemployed. He had been kicked out of his father's house in North Carolina, and Xiong had allowed him to move in. In August, the couple separated, and Thao moved out. But in early September,

less than a week before her husband's arrest, she moved back into the home. She testified that when she returned, Vang lived in the master bedroom with his wife and baby. Thao and her husband slept in the living room, and their children slept in the other bedroom. This arrangement lasted for only a day or two, when Vang was asked to leave and subsequently moved out. She testified that Vang left personal items in the home and that he still had a key to the house. She did not know how the stripped car had come to the residence, but she assumed Vang was "fixing his car." Thao testified that the handwriting in the notebook was not her husband's. She did not know where Vang was at the time of trial. After Vang left, and before the arrest, Thao had begun to move some of her things back into the master bedroom. She was not at home when the police came, and she was not arrested or charged with a crime on the day her husband was arrested.

(a) Xiong contends the evidence was insufficient to support his convictions of possession of methamphetamine with intent to distribute and possession of marijuana. He argues there was affirmative evidence that his cousin had a right of equal access to the drugs. We agree.

Xiong alone was charged with possession of the methamphetamine and marijuana, and the State argued constructive possession. Where the State prosecutes only one of two or more people who had equal access to the contraband, the State must show sole constructive possession by the defendant. *Turner v. State*, 276 Ga. App. 381, 383 (623 SE2d 216) (2005); *Reid v. State*, 212 Ga. App. 787, 788, n. 1 (442 SE2d 852) (1994). Compare *Waters v. State*, 280 Ga. App. 566, 567 (634 SE2d 508) (2006) (where State charges two defendants who had equal access with joint possession, the State does "not bear the burden of showing that one or the other was in sole possession"). Although "a finding of constructive possession must be based upon some connection between the defendant and the contraband other than spatial proximity," (citations and punctuation omitted) *Reid*, 212 Ga. App. at 788, a presumption of constructive possession of the entire premises and all the property therein will arise from ownership or control of the premises. See *Knighton v. State*, 248 Ga. 199, 200, n. 1 (282 SE2d 102) (1981), and *Burdett v. State*, 159 Ga. App. 394 (2) (283 SE2d 622) (1981), cited with approval in *State v. Johnson*, 280 Ga. 511, 513 (630 SE2d 377) (2006). That presumption may be rebutted by a showing of equal access.

> [F]or the equal access rule to rebut the inference of possession of contraband, affirmative evidence must show that a person other than the defendant or a member of his immediate household had equal access to the specific loca-

tion where the contraband was found. *Cochran v. State*, 190 Ga. App. 884, 885-886 (1) (380 SE2d 319) (1989); *Mobley v. State*, 190 Ga. App. 771, 772 (1) (380 SE2d 290) (1989).

*Gurr v. State*, 238 Ga. App. 1, 2 (1) (a) (516 SE2d 553) (1999). When affirmative evidence of equal access is shown but "there is evidence connecting the defendant to the contraband other than his own equal access," the jury must resolve the question of guilt or innocence. *Sing v. State*, 217 Ga. App. 591, 592 (1) (458 SE2d 493) (1995).

Here, there is no evidence connecting Xiong to the methamphetamine or marijuana other than his own equal access. Xiong's cousin had the same access to the contraband, the baggies, scales, and the notebook as Xiong. See, e.g., *Wright v. State*, 154 Ga. App. 400, 401 (1) (268 SE2d 378) (1980) (defendants affirmatively showed that adult brother had equal access to drugs found on chair in bedroom in which he slept). Although his cousin had left, there was affirmative evidence that his possessions were still in the home and that he still had a key. Id. (brother had key and full access). None of the items was found in an area exclusively used by Xiong; rather most were in "open, notorious and easily accessible areas." Id. And the methamphetamine was in a closet in the bedroom most recently occupied by Vang. Finally, there was affirmative evidence that the handwriting in the notebook was not Xiong's. See, e.g., *Diggs v. State*, 234 Ga. App. 335, 337 (506 SE2d 683) (1998) ("State presented no evidence showing that [defendant] wrote, controlled or even handled the memo referring to ounces, pounds, names and currency found in his home"). Thus the evidence was insufficient to show that Xiong possessed either the methamphetamine or the marijuana. Convictions on those counts must be overturned. See *Turner*, 276 Ga. App. at 381 (acquittal required where sole evidence of possession is constructive and others have equal access to the contraband).

(b) Xiong contends the evidence was insufficient to support his conviction of theft by receiving the stolen car. He argues there is no evidence to show that he knew or should have known the car was stolen. He adds that he cooperated and assisted the police in their investigation, he consented to the search, and he did not flee.

OCGA § 16-8-7 (a) provides: "A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner." "Proof of possession of the stolen property is not by itself sufficient to show the accused knew or should have known the property was stolen. [Cit.]" *McKinney v. State*, 276 Ga. App. 75, 76 (622 SE2d 427) (2005). But "guilt may be inferred from possession along with other evidence — including circumstantial

evidence — of guilty knowledge which would excite suspicion in the mind of an ordinarily prudent person." (Citation omitted.) *Slaughter v. State*, 240 Ga. App. 758, 760 (6) (525 SE2d 130) (1999).

Yang testified that Xiong was always working on cars; an officer testified it was apparent that "a lot of work on cars [was] going on at the residence"; Xiong gave consent to look under the hood of the car; and car parts were found throughout the house. Accordingly, the jury was authorized to conclude that Xiong had worked on the stolen car and that he was aware of the condition of that car. The jury was also authorized to conclude that Xiong knew or should have known that the car was missing a required VIN. Although the officer only testified that he could not find a VIN "where I normally locate them," since 1969, a VIN has been required to be permanently placed on each vehicle so that it is visible by a person standing at the left windshield pillar. See 49 CFR §§ 565.4 (f), 565.5 (b) (recently renumbered as 49 CFR §§ 565.13 (f), 565.14 (b)); *New York v. Class*, 475 U. S. 106, 108 (106 SC 960, 89 LE2d 81) (1986); *People v. Anderson*, 531 NE2d 116, 119-120 (Ill. App. 1988). Thus, the jury was authorized to conclude that the officer was referring to the VIN located there and that Xiong was aware it was missing. A missing VIN should put a reasonable person on notice that the car could have been stolen. See *Ingram v. State*, 160 Ga. App. 300 (287 SE2d 304) (1981) (sufficient evidence of knowledge that car was stolen where two cars found on defendant's property had been stripped of many parts, the VIN had been scraped from the doors of one, and the motor from one car was in defendant's personal car). Accordingly, the trial court correctly denied Xiong's motion for new trial on this issue.

(c) For the same reason, Xiong's conviction for operating a chop shop was supported by sufficient evidence. The definition of a "chop shop" requires the State to prove that the owner or operator of the chop shop knew that the car or parts thereof were illegally obtained by theft or fraud. OCGA § 16-8-82 (1). See also OCGA § 16-8-83 (a). As shown above, the State submitted sufficient evidence on this point. The same evidence undercuts Xiong's contention that he did not know that the VIN had been removed.

3. Finally, Xiong contends the trial court erred by reading the equal access charge in a manner that suggested to the jury that it did not apply to the counts of theft by receiving and operating a chop shop.

The court first instructed the jury on Counts 1, 2, and 9 — the three drug possession charges. The court then charged on actual and constructive possession, sole or joint possession, equal opportunity, mere presence, presumption of possession for property owners, and equal access. The court then charged on the remaining offenses including operating a chop shop and theft by receiving stolen

property. The court did not explain that equal access or constructive possession pertained to all of the items of evidence nor repeat the equal access charge following these other charges. Xiong argues that the court erred by not making clear to the jury that the law of equal access applied to the possession element of theft by receiving the car and operating a chop shop.

We find no reversible error on this point. First, "[j]ury instructions must be read and considered as a whole when determining whether the charge was correct. [Cit.]" *Spearman v. State*, 267 Ga. 600, 602 (5) (481 SE2d 814) (1997). Second, a defendant is only entitled to the equal access charge when the court has also charged a presumption of possession arising from the evidence. *Johnson*, 280 Ga. at 513. Here, the court gave both the presumption and equal access charges following the drug charges. Therefore, the jury either applied both the presumption and equal access charges to all the counts or only the drug counts. It is highly unlikely that the jury applied the ownership presumption to the counts of theft by receiving and operating a chop shop without also considering the equal access rule. We find no reversible error. See also *Stansell v. State*, 270 Ga. 147, 150-151 (510 SE2d 292) (1998) (no error found where court did not address concept of reasonable doubt in portions of the charge relating to each specific offense).

*Judgment affirmed in part and reversed in part. Smith, P. J., and Mikell, J., concur.*

DECIDED JANUARY 27, 2009.

*Kathleen J. Anderson*, for appellant.
*Richard K. Bridgeman, District Attorney, Antonio E. Veal, Assistant District Attorney*, for appellee.