## A09A1355. SWAN v. THE STATE.

(686 SE2d 310)

ADAMS, Judge.

Virginia Louise Swan appeals after she was convicted by a jury of trafficking in methamphetamine (OCGA § 16-13-31), violating the Georgia Controlled Substances Act (OCGA § 16-13-30) and contributing to the delinquency of a minor (OCGA § 16-12-1). We affirm.

Viewed in the light most favorable to the verdict,[1] the evidence showed that on July 28, 2004, five to six agents from the Cherokee County Multi-Agency Narcotics Squad arrived at Swan's house to ask for consent to search. While the officers waited for someone to answer their knock, they observed a small surveillance camera mounted above the door. Swan answered the door and invited the officers inside. Swan told them that her boyfriend was inside the house, and they asked her to find him. As Swan led the officers through the house to the master bedroom, she yelled out that the police were there to do a search. The bedroom door was locked, and Swan knocked on it. After approximately one minute, the door was opened, and the officers were able to see a man lying on the bed. This man, Gary Reece, was later indicted as Swan's co-defendant. Also in the bedroom was a video monitor displaying a view of the door they had entered. One of the officers asked if there was anyone else in the house, and Swan led them to her daughter's bedroom. As they walked to that bedroom, Swan again yelled out that they were conducting a search. The officers determined that Swan's 21-year-old daughter and a 14-year-old boy were also in the house.

A subsequent search of the master bedroom revealed a black PVC pipe, inside of which officers found a number of baggies containing methamphetamine. Officers also found a set of digital scales in the bedroom and "a glass pipe that appeared to have been used to smoke methamphetamine." Police later determined that the methamphetamine had a combined weight of 83.03 grams.

Swan told police that she had no knowledge of the drugs or other items found in the bedroom, noting that people came "in and out of [the] house all day and anyone could have put them there." Nevertheless, she conceded that the master bedroom was her bedroom and that Reece had been staying there with her. She admitted that the night before the search, both of them had slept in the bed where the items were found. In addition, a urine sample taken from Swan on the day of the search tested positive for methamphetamine.

Reece testified at trial that he had been staying with Swan for three months prior to the search, and that they had an "intimate

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

relationship." He would do chores around her property and, in exchange, got drugs from her. The morning before the search, Reece saw Swan smoking methamphetamine out of the same kind of glass pipe police found in the bedroom. Swan and Reece were in the bedroom together when the police arrived to search the house. When they saw the police appear on the video monitor, Swan "jumped up . . . and went out and closed the [bedroom] door and locked it." Reece said that Swan sold methamphetamine from her home. Swan and her daughter made trips to a dealer at least once per week and would come back with methamphetamine to sell. These sales occurred primarily in Swan's bedroom. Reece said that Swan used the PVC pipe to store the drugs "so she could go outside and hide it without it getting damaged." He said that he had seen the PVC pipe a day or two before the search, but did not know where it was kept on a daily basis.

The 14-year-old boy testified that he had used methamphetamine at Swan's house with her daughter. The boy had been living with Swan for about one week before the search occurred and never saw Swan smoke methamphetamine. But adults often came and went to the house, entering either Swan's or the daughter's bedroom, where the door would be closed. When the adults emerged, the boy sometimes saw smoke coming from the bedrooms.

The prosecution also presented evidence of a similar transaction from 2000, in which Sergeant Jamie Gianfala of the Cherokee County Sheriff's Office served a search warrant for methamphetamine at another house on the same street. When Gianfala entered the house, he encountered Swan, who immediately ran toward the bathroom. Gianfala followed her and saw a bag of methamphetamine in the bathtub. He found more methamphetamine in a box on the bed. Swan told him that her daughter and she were the only people living in the house at the time, and she admitted the methamphetamine was hers. Police also located a set of scales in Swan's bedroom during that incident.

Swan testified at trial that when police arrived at her house to conduct the search, she was sitting at her computer in the computer room. She and her daughter had been out most of the day shopping and at the dentist. They had not returned until about 7:00 p.m. Swan said that a number of people had been in the house that day, but she had never seen any of them use methamphetamine. Swan was often gone for her business and a number of people had access to her house. When she let the police inside and took them back to her bedroom, they found it locked with Reece inside. Swan said that Reece had been staying with her off and on for a while, and they shared the bedroom. She said that they did methamphetamine together, but he supplied the drugs. She denied any knowledge of the

drugs or other items taken from her bedroom. Swan also denied any knowledge that her daughter or the 14-year-old boy was using methamphetamine in her house.

1. Swan first argues that the trial court erred in allowing the admission of the similar transaction evidence. She contends that it was admitted for the improper purpose of introducing evidence of her propensity and character. She also contends that no sufficient connection existed between the incident and the crime charged in this case.

> To qualify for admission as a similar transaction, the State must show that (1) it is introducing the evidence for an appropriate purpose, (2) sufficient evidence establishes that the accused committed the independent offense, and (3) sufficient similarity exists between the independent offense and the crime charged, so that "proof of the former tends to prove the latter."

(Citation omitted.) *Williams v. State*, 279 Ga. App. 83, 86 (3) (630 SE2d 601) (2006). This Court will not disturb the trial court's decision to admit similar transaction evidence unless it is clearly erroneous. *Tanner v. State*, 243 Ga. App. 640, 642 (2) (533 SE2d 794) (2000).

The State introduced the similar transaction evidence for the stated purpose of showing Swan's "knowledge and intent" regarding the methamphetamine found in her room. Swan disavowed all knowledge of the drugs, and the State offered the similar transaction evidence to rebut this defense. And the trial court instructed the jury to consider the evidence for this limited purpose. We find, therefore, that the evidence was introduced for an appropriate purpose. See *Slaughter v. State*, 282 Ga. App. 276, 279 (1) (638 SE2d 417) (2006); *Guild v. State*, 236 Ga. App. 444, 446 (3) (512 SE2d 343) (1999).

Swan also argues, however, that her prior possession charge was not sufficiently similar to the charge of trafficking in this case. Although Swan urges us to focus on the distinctions between the two crimes,

> [t]he test of admissibility of evidence of other criminal acts by the defendant is not the number of similarities between the two incidents. Rather, such evidence may be admitted if it is substantially relevant for some purpose other than to show a probability that the defendant committed the crime on trial because he is a man of criminal character. Drug cases are no different from any other cases. If the defendant is proven to be the perpetrator of another drug crime and

> the facts of that crime are sufficiently similar or connected to the facts of the crime charged, the separate crime will be admissible to prove identity, motive, plan, scheme, bent of mind, or course of conduct.

(Citation omitted.) *Slaughter*, 282 Ga. App. at 279 (1). This Court has previously held that evidence of prior drug possession may be introduced at trial on a trafficking offense where the circumstances surrounding the two crimes are sufficiently similar. Id.; *Milton v. State*, 232 Ga. App. 672, 675 (2) (a) (503 SE2d 566) (1998); *Gonzalez v. State*, 213 Ga. App. 667, 668 (1) (445 SE2d 769) (1994).

Here, both incidents occurred on the same street and both involved methamphetamine. In both incidents, police found the drugs in Swan's bedroom along with scales. Although Swan was charged with different crimes arising from each of these incidents, "the separate crime need not be identical to the charged crime to be admissible." *Murphy v. State*, 272 Ga. App. 287, 289 (1) (612 SE2d 104) (2005). Under these circumstances, we find that the trial court properly admitted the State's similar transaction evidence.

2. Swan also asserts that the evidence was insufficient to support her conviction for trafficking in methamphetamine because the prosecution established only that the drugs were found in her home, without presenting any additional evidence to connect her to them. She asserts that because Reece and she shared the bedroom, he had equal access to the drugs.

> With respect to the defense of equal access, it is general law in this state that merely finding contraband on premises occupied by defendant is not sufficient to support a conviction if it affirmatively appears from the evidence that persons other than the defendant had equal opportunity to commit the crime. Presence at the scene of a crime and nothing more will not support a conviction.

(Citation and punctuation omitted.) *Carlisle v. State*, 242 Ga. App. 253, 255 (1) (529 SE2d 385) (2000).

Nevertheless, a rebuttable presumption arises that Swan possessed the methamphetamine because she was the owner of the house and because it was found in her bedroom. *Love v. State*, 227 Ga. App. 772, 773 (490 SE2d 527) (1997). This inference can be rebutted by affirmative evidence that a person other than the defendant or a member of her immediate household had equal access to the specific location where the contraband was found. *Gurr v. State*, 238 Ga. App. 1, 2 (1) (a) (516 SE2d 553) (1999); *Love*, 227 Ga. App. at 773. "Whether the evidence of equal access is sufficient to

rebut any inference of possession arising from discovery of drugs in the defendant's bedroom . . . is a question properly left to the jury." (Citation omitted.) *Carlisle*, 242 Ga. App. at 255 (1).

In this case, "[b]ecause [Reece] was a member of [Swan's] immediate household, evidence of his access is not sufficient, as a matter of law, to rebut the presumption against [Swan] and, therefore, does not demand an acquittal under the equal access rule." (Citation omitted.) *Wilson v. State*, 231 Ga. App. 525, 527 (1) (499 SE2d 911) (1998).

> Furthermore, there is no requirement that the State must in every case prove that contraband was in the exclusive possession of one who is shown to be the owner or lessee of the premises. While evidence that the defendant-owner or lessee shared the premises with another does not demand a conviction, it may nevertheless authorize the jury, as the trier of fact, to find that the defendant was in at least joint possession of the contraband.

(Citation and punctuation omitted.) Id. at 527 (1).

Here, the State proved more than Swan's mere presence in the room where the drugs were found. Reece testified that Swan and her daughter sold drugs from her house. Swan tested positive for methamphetamine the day of the search. The 14-year-old boy testified that he had smoked methamphetamine with Swan's daughter. He also said that people came to Swan's house, went into the bedrooms and emerged with smoke. Moreover, the jury was properly charged on burden of proof, reasonable doubt, parties to a crime, possession (sole and joint, actual and constructive), and equal access. Accordingly, we find the evidence at trial sufficient to enable the jury to find Swan guilty beyond a reasonable doubt. See *Waters v. State*, 280 Ga. App. 566, 568 (634 SE2d 508) (2006) (where two defendants are charged with joint possession of methamphetamine, State does not bear burden of showing that one or the other was in sole possession of the drug); *Whitfield v. State*, 217 Ga. App. 402, 405 (3) (457 SE2d 682) (1995). Compare *Xiong v. State*, 295 Ga. App. 697, 699 (2) (a) (673 SE2d 86) (2009) (where State prosecutes only one of two or more people with equal access to contraband, the State must show sole constructive possession by defendant).

*Judgment affirmed. Blackburn, P. J., and Doyle, J., concur.*

DECIDED OCTOBER 30, 2009.

*Gregory A. Hicks*, for appellant.

*Garry T. Moss, District Attorney, Sara A. Thompson, Assistant District Attorney*, for appellee.