## A11A1321. HOLIMAN v. THE STATE.

(720 SE2d 363)

BLACKWELL, Judge.

Following a bench trial in Fulton County, Jamison Holiman was convicted of trafficking in 400 grams or more of a mixture containing cocaine,[1] based on evidence that Jamison and his brother, Royrecaus, had joint constructive possession of the mixture.[2] Jamison appeals, contending that the evidence adduced at trial is insufficient to sustain his trafficking conviction for several reasons. First, Jamison asserts that, because the State did not prosecute his brother, and because it is undisputed that his brother had equal access to the mixture, proof of joint constructive possession cannot sustain his conviction, and the State instead was required to prove that Jamison had sole constructive possession of the mixture. Second, even if proof of joint constructive possession could sustain the conviction, the evidence does not really prove, Jamison says, that he had constructive possession of any of the mixture, much less 400 grams or more of it. Finally, Jamison contends that the evidence does not show that the cocaine mixture had a purity of 10 percent or more.[3] We find no merit in these claims and affirm the judgment of conviction.

To prove that Jamison committed the offense of which he was convicted, the State had to prove beyond a reasonable doubt that Jamison knowingly possessed 400 grams or more of a "mixture with a purity of 10 percent or more of cocaine." OCGA § 16-13-31 (a) (1) (C). When we consider whether the evidence adduced at trial is sufficient to sustain the trafficking conviction, we view the evidence in the light most favorable to the prosecution, and we ask only whether any rational trier of fact could find proof beyond a reasonable doubt of the essential elements of trafficking. *Ferguson v. State*, 307 Ga. App. 232, 233 (1) (704 SE2d 470) (2010). It is for the trier of fact to pass upon the weight and credibility of the evidence and to resolve any conflicts in the evidence, and we do not concern ourselves with such things. See id. "[I]f the record contains some competent evidence to prove each element of the crime of which the defendant

---

[1] See OCGA § 16-13-31 (a) (1) (C). Jamison also was convicted of possession of marijuana, see OCGA § 16-13-30 (a), but he does not complain on appeal about the marijuana conviction.

[2] Trafficking requires, among other things, the knowing sale, manufacture, delivery, importation, or possession of cocaine or a mixture containing cocaine. See OCGA § 16-13-31 (a) (1). There is no evidence in this case, however, that Jamison sold, manufactured, delivered, or imported any cocaine or cocaine mixture. For this reason, we focus on trafficking by the knowing possession of a cocaine mixture.

[3] Jamison was convicted of trafficking in a mixture with a purity of 10 percent or more of cocaine, which is prohibited by OCGA § 16-13-31 (a) (1). Although trafficking in a mixture with a purity of less than 10 percent of cocaine also is a crime, it is prohibited by a different subsection of the trafficking statute, OCGA § 16-13-31 (a) (2).

was convicted, even though that evidence may be contradicted, we must uphold the conviction." Id.

The evidence here shows that law enforcement officers secured a warrant in November 2005 to search an apartment in Fulton County in connection with an extensive investigation of cocaine sales and trafficking in west Atlanta, and when they executed the warrant, the officers found Jamison and his brother inside. According to the officers, the apartment is a small one, and it consists primarily of a kitchen and common living area, two bedrooms, and a balcony. By the time the officers executed the warrant, Jamison had been in the apartment for at least two hours, and he had been its sole occupant for most of that time, until his brother arrived at the apartment just before the officers executed the warrant.[4] The officers first attempted to gain entry to the apartment by knocking on the door and announcing that they had a warrant, but when they did so, they heard "people running through the apartment," and they then elected to make a forcible entry. When they entered the apartment, the officers found Jamison hiding under a bed in the first bedroom, and they discovered Royrecaus attempting to escape off the balcony. The officers ordered Jamison to come out from his hiding place, but he refused, and the officers had to drag him from it and secure him with handcuffs. Jamison then became belligerent and began yelling profanities at the officers.

Inside the apartment, the officers found not only Jamison and his brother, but also a little marijuana, a lot of cocaine, and equipment commonly used in the distribution of illegal drugs. In the kitchen, for instance, the officers saw a clear plastic bag in plain view, in which they found approximately 95 grams of a substance that, testing later confirmed, was cocaine hydrochloride.[5] The officers also found two digital scales, pots and baking soda,[6] packaging materials, an empty holster for a handgun, and two small bags of marijuana in the kitchen. In the bedroom in which the officers found Jamison, they discovered another bag of marijuana, which was on the floor and near the bed under which Jamison had hidden. And in the other bedroom, the door of which was wide open, the officers found eight plastic bags on the bed, which together contained, as testing later

---

[4] The officers put the apartment under surveillance at least two hours before they executed the warrant, and no one entered or left the apartment, they said, during the course of their surveillance, except Royrecaus, who arrived just before the warrant was executed.

[5] Cocaine hydrochloride is more commonly known as "powder" cocaine. The officers also found about 1.65 grams of cocaine base — more commonly known as "crack" cocaine — in the kitchen, but the purity of the cocaine base found in the kitchen never was ascertained, so we do not consider it further.

[6] According to the officers, the discovery of pots and baking soda is significant because they often are used in the manufacture of crack cocaine.

confirmed, approximately 373 grams of cocaine hydrochloride and nearly 123 grams of cocaine base. Also in the second bedroom, the officers discovered a black bag, which contained approximately $3,400 in cash. According to the officers, the apartment is relatively open, and the bags of cocaine found in both the kitchen and the second bedroom were easily visible from the common living area of the apartment, such that no occupant of the apartment could have failed to see them. In addition, the officers described a strong odor of burnt marijuana throughout the apartment.

After Jamison was apprehended, he made several spontaneous statements to the officers. In the course of these statements, Jamison referred to the apartment in which he and his brother were found as "our house." More specifically, Jamison told the officers that he had been on the balcony as the officers approached the apartment, had seen them approach, and had attempted to warn Royrecaus that officers "were coming to our house." The officers also found some personal effects of Jamison — mail addressed to him — in the bedroom in which Jamison had hidden.

At trial, the State presented evidence of two similar transactions. In the first of these transactions, in May 2004, two officers found Jamison in the passenger seat of a vehicle in Atlanta, and they found a black bag — which contained approximately 11 grams of cocaine base, packaged for distribution, and more than $5,000 in cash — on the floor of the back seat of the vehicle. In the second, an officer detained Jamison in Douglasville in February 2005 and found him in possession of about 3.5 grams of cocaine base and more than $1,300 in cash. With this evidence and the proper standard of review in mind, we turn now to the claims that the evidence is insufficient to sustain the trafficking conviction.

1. We first consider whether the evidence shows that Jamison knowingly possessed the cocaine mixture found in the apartment. As we have explained before, "[t]he law recognizes that possession can be actual or constructive, sole or joint," *Richardson v. State*, 305 Ga. App. 850, 852 (700 SE2d 738) (2010), and the nature of each theory of possession is settled and familiar. A person has actual possession of a thing if he "knowingly has direct physical control [of it] at a given time." *Vines v. State*, 296 Ga. App. 543, 545 (1) (675 SE2d 260) (2009) (citation omitted). "A person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it." Id. (citation omitted). "If one person alone has actual or constructive possession of a thing, possession is sole," but "[i]f two or more persons share[ ] actual or constructive possession of a thing, possession is joint." Id. (citation omitted). The State says that the evidence in this case shows that Jamison and his

brother had joint constructive possession of the cocaine mixture in the apartment. Jamison claims, however, that the State must show that he had sole constructive possession of the mixture and that, in any event, the evidence does not show that he had constructive possession of it, sole or joint. We will address these claims in turn.

(a) In *Reid v. State*, 212 Ga. App. 787, 788, n. 1 (442 SE2d 852) (1994), this Court said that, when more than one individual has equal access to contraband, but only one of these individuals is prosecuted for its possession, and the State relies on evidence of constructive possession, the State must prove that the individual charged "was in *sole* constructive possession" of the contraband. (Emphasis in original.) We have found no mention of this principle in any case that preceded *Reid*, and our opinion in *Reid* cites no authority for it and does not explain why it must be so. The principle was not mentioned again for some time, but in the past few years, this Court has invoked the principle again and again, but never explaining its basis. See, e.g., *Jefferson v. State*, 309 Ga. App. 861, 862 (1) (711 SE2d 412) (2011); *Wheeler v. State*, 307 Ga. App. 585, 586-587 (1) (705 SE2d 686) (2011); *Bodiford v. State*, 305 Ga. App. 655, 657 (700 SE2d 648) (2010); *Fyfe v. State*, 305 Ga. App. 322, 326 (2) (699 SE2d 546) (2010); *Rogers v. State*, 302 Ga. App. 65, 67 (1) (690 SE2d 437) (2010); *Swan v. State*, 300 Ga. App. 667, 671 (2) (686 SE2d 310) (2009); *Millsaps v. State*, 300 Ga. App. 383, 385 (685 SE2d 371) (2009); *Cochran v. State*, 300 Ga. App. 92, 94 (1) (a) (684 SE2d 136) (2009); *Xiong v. State*, 295 Ga. App. 697, 699 (2) (a) (673 SE2d 86) (2009); *Benitez v. State*, 295 Ga. App. 658, 660 (1) (673 SE2d 46) (2009); *Turner v. State*, 276 Ga. App. 381, 383 (623 SE2d 216) (2005). Given the absence of an explanation for the principle, some reasonable people might question whether it is a sound one, especially considering the settled rule that the failure of the State to prosecute one party to a crime ordinarily offers no defense to other parties to the crime. See OCGA § 16-2-21 (party to a crime can be convicted even if the principal has not been prosecuted); *Davis v. State*, 163 Ga. 247, 248 (135 SE 916) (1926) ("Failure to prosecute the principal will in no wise relieve the accessory."); see also *Grimes v. State*, 245 Ga. App. 277, 278 (2) (537 SE2d 720) (2000) ("A party to a crime may be prosecuted and convicted for the commission of the offense regardless of whether anyone else was prosecuted."). We find it unnecessary in this case, however, to pass upon the soundness of the principle, and we will assume that the *Reid* principle is sound.

It is undisputed that the State did not prosecute Royrecaus for his joint constructive possession of the cocaine mixture in the apartment, but it is equally undisputed that the United States did prosecute Royrecaus in federal court. We never have held that the *Reid* principle applies when, although all persons with equal access

to the contraband are prosecuted, they are prosecuted by different sovereigns or in different courts. And it makes no sense to apply the *Reid* principle in such a case, especially considering that the law generally bars a prosecution in our courts if the offender already has been prosecuted in federal court for the same conduct,[7] see OCGA § 16-1-8 (c), reflecting a public policy that duplicative prosecutions in state and federal court ought not be encouraged. Because Royrecaus was prosecuted in federal court for possession of the cocaine mixture in the apartment, we hold that the State was permitted to prove its case against Jamison by proof of joint constructive possession even if the *Reid* principle is proper.

(b) We turn now to the contention that the evidence does not prove that Jamison had constructive possession, joint or sole, of any mixture containing cocaine, much less 400 grams or more of such a mixture. According to Jamison, the evidence fails to show that he had any connection to the apartment in which the mixture was found, except that he was present in the apartment. And even if the evidence shows some connection with the apartment, Jamison says, there is no proof that he has any connection to the second bedroom of the apartment, in which the greater quantity of mixture was found. We disagree.

Like many other elements of proof, constructive possession can be proven by circumstantial evidence. *Brown v. State*, 307 Ga. App. 99, 100 (1) (a) (704 SE2d 227) (2010). When constructive possession of contraband is to be proven by circumstantial evidence, of course, the evidence must show something more than the mere presence of the defendant at a place in which the contraband is found or his mere spatial proximity to it. See *Davenport v. State*, 308 Ga. App. 140, 145 (1) (b) (706 SE2d 757) (2011). And as with anything else proven entirely by circumstantial evidence, the evidence must exclude every reasonable hypothesis, save that of constructive possession by the defendant. See *Scott v. State*, 305 Ga. App. 596, 598 (699 SE2d 894) (2010). But whether the evidence shows something more than mere presence or proximity, and whether it excludes every other reasonable hypothesis, are questions committed principally to the trier of fact, and we will not disturb the decisions of the trier of fact about these things unless they cannot be supported as a matter of law. See *Washington v. State*, 251 Ga. App. 206, 209 (1) (553 SE2d 855) (2001).

As we explained earlier, a person constructively possesses a thing

---

[7] A successive prosecution in state court is not barred by an earlier prosecution in federal court if "each prosecution requires proof of a fact not required in the other prosecution" or if "the crime [prosecuted in state court] was not consummated when the former trial [in federal court] began." OCGA § 16-1-8 (c).

when he has the power to exercise dominion and control of it and concurrently has the intent to do so. In this case, Jamison does not dispute that he had the power to exercise dominion and control over the cocaine mixture in both the kitchen and the second bedroom, but he does dispute that the evidence shows that he had an intent to do so. We are unpersuaded.

In light of all evidence in the record and the inferences that might properly be drawn from that evidence, a rational trier of fact in this case might properly have found, we think, that Jamison intended to exercise dominion and control over the cocaine mixture in the apartment at and before the time the officers made their entry. In the first place, Jamison himself referred to the apartment as "our house," and a rational trier of fact might take this reference as an admission of his control of the premises,[8] from which arises a presumption that Jamison had possession of items found on the premises, including the cocaine mixture. See *Bailey v. State*, 294 Ga. App. 437, 439-440 (1) (669 SE2d 453) (2008) ("If the State presents evidence that a defendant owned or controlled premises where contraband was found, it gives rise to a rebuttable presumption that the defendant possessed the contraband."). His brother, of course, may have had equal access to the apartment and the cocaine mixture found inside, but a showing of equal access does not rebut the presumption of possession as a matter of law when all persons having equal access to the contraband are alleged to have joint constructive possession of it, *Davenport*, 308 Ga. App. at 146 (1) (b), and a showing of equal access does not demand an acquittal in any event unless "the *sole* evidence of possession of contraband found on the premises is the defendant's [control] of the premises." *Clewis v. State*, 293 Ga. App. 412, 415 (2) (667 SE2d 158) (2008); see also *Bailey*, 294 Ga. App. at 440 (1).

Here, the State contended that Jamison and his brother had joint constructive possession of the cocaine mixture. Moreover, there was other evidence that Jamison intended to exercise dominion and control over the cocaine mixture in the apartment, including evidence that the cocaine mixture was in plain view and visible from the common sitting area of the apartment, that Jamison was in the apartment alone for an extended period of time, that Jamison

---

[8] The evidence that Jamison was inside the apartment alone for a substantial period of time before his brother arrived, as well as evidence that some personal effects of Jamison were found inside the apartment, give credence to such an interpretation of the reference to "our house." We also note that Jamison maintaining his residence at some place other than the apartment — his grandmother testified that he did not live at the apartment — is not inconsistent with evidence that he controlled the apartment. One can control premises other than his residence.

attempted to warn his brother of the approach of police officers, that both men ran about the apartment after the officers knocked on the door and announced their presence, and that Jamison ultimately attempted to hide from officers under a bed. In addition, there was evidence of two similar transactions, which tended to show a course of conduct and intent to possess and distribute cocaine, possess large amounts of currency, and in one of the similar transactions, use a black bag to transport drug-related items. "[I]ntent to exercise control can be inferred [from] the totality of the circumstances, including the presence of large amounts of contraband and drug paraphernalia in plain view . . . and the defendant's attempt to flee or hide from police." *Moody v. State*, 232 Ga. App. 499, 501 (1) (502 SE2d 323) (1998). Taken together, the evidence in the record tends to show a connection between Jamison and the contraband sufficient to prove that he knowingly shared with his brother the power and intention to exercise dominion or control over the cocaine mixture. See *Glenn v. State*, 251 Ga. App. 336, 337-338 (1) (553 SE2d 323) (2001).

As for the contention that Jamison did not have constructive possession of the mixture found in the second bedroom — even if he did have constructive possession of the mixture found in the kitchen — it appears to be premised on the notion that the second bedroom was that of Royrecaus. But the evidence does not clearly show that the bedroom was, in fact, that of Royrecaus, notwithstanding that his identification was found in that bedroom. Moreover, the door of the second bedroom was wide open so that the bag of cocaine was clearly visible to other areas of the apartment, and both quantities of the mixture — that found in the kitchen and that found in the second bedroom — were admitted into evidence, which permitted the court below to compare their appearance and packaging and to draw the conclusion that they had a common source. See *Riley v. State*, 292 Ga. App. 202, 206-207 (2) (663 SE2d 835) (2008) (joint possession of contraband in basement affirmed based in part on fact that contraband in defendant's possession was in the same packaging as contraband in the basement); *Taylor v. State*, 285 Ga. App. 697, 698-699 (1) (647 SE2d 381) (2007) (red cellophane wrapping on marijuana jointly possessed by defendant supported State's charge that defendant also was involved in cocaine trafficking where cocaine at same apartment also was packaged in red cellophane wrapping). In light of this evidence, we cannot say that the evidence is insufficient to connect Jamison to *all* the cocaine mixture found in both the kitchen and second bedroom of the apartment.[9] See

---

[9] Even if the evidence would have permitted the court below to find that Jamison

*Swanger v. State*, 251 Ga. App. 182, 184-185 (1) (a) (554 SE2d 207) (2001).

The circumstantial evidence in this case shows a connection between Jamison and the cocaine mixture found in the apartment beyond mere presence and spatial proximity, or at least a rational trier of fact could find that it does. It also is sufficient to exclude every reasonable hypothesis, save that Jamison intended to exercise dominion and control over the cocaine mixture. For these reasons, the evidence is sufficient to prove beyond a reasonable doubt that Jamison had constructive possession of the mixture in which he was convicted of trafficking.

2. Jamison also contends that the evidence does not prove that the cocaine mixture in the apartment had a purity of ten percent or more of cocaine. The State put into evidence, however, lab reports, which show that each sample of the mixture that was tested had a purity well in excess of 10 percent of cocaine. And as Jamison concedes, this Court has held before that a lab report is sufficient to establish the purity of a mixture containing cocaine. See *Stroud v. State*, 286 Ga. App. 124, 127 (2) (648 SE2d 476) (2007); *Lombardo v. State*, 187 Ga. App. 440, 442 (5) (370 SE2d 503) (1988). Jamison argues that these precedents should not be applied in trafficking cases, but that argument is specious, considering that both *Stroud* and *Lombardo* were trafficking cases. In any event, we see no reason to limit *Stroud* and *Lombardo*, and we decline to do so. Under those precedents, the lab reports were enough to prove the purity of the cocaine mixture. See *Stroud*, 286 Ga. App. at 127 (2).

Jamison also argues that the State failed to prove that the samples tested are a fair and accurate representation of the entire quantity of the mixture in which he was convicted of trafficking, especially considering that the mixture was found in multiple bags. We do not agree. Based on the testimony at trial of the chemist who tested these samples, the court was authorized to find that a sample was taken from each of the bags for testing and that the samples together were a fair and accurate representation of all the mixture found in the apartment. Even if a sample had not been taken from every bag, the court, as the trier of fact, would have been authorized to view the mixture, which was admitted in evidence, and conclude

---

possessed the mixture in the second bedroom, the court did not actually convict him of possessing that mixture, Jamison says, pointing to the fact that the court referenced only the lab report concerning the cocaine mixture in the kitchen in its order denying his motion for new trial. This contention is entirely speculative and is not supported by the transcript of the proceedings at trial, the verdict, or the judgment of conviction. The reference in the order denying the motion for new trial can be fairly understood as a mere illustration of the proof of purity at trial, not as a statement that the mixture in the kitchen was the only mixture that Jamison possessed.

that it appeared sufficiently uniform to render the samples taken properly representative of the entire quantity. See *Means v. State*, 188 Ga. App. 210, 210-211 (2) (372 SE2d 484) (1988) (chemist randomly tested contents of 20 bags out of the 121 bag total).

*Judgment affirmed. Barnes, P. J., concurs. Adams, J., concurs in judgment only.*

DECIDED NOVEMBER 30, 2011.

*Long D. Vo*, for appellant.
*Paul L. Howard, Jr., District Attorney, Stephany J. Luttrell, Assistant District Attorney*, for appellee.