301 Ga. 874
FINAL COPY

S17A1150. BENNETT v. THE STATE.

BOGGS, Justice.

Appellant Otis Lee Bennett was tried before a jury and found guilty of malice murder, and multiple counts of felony murder, aggravated assault, cruelty to children in the first degree, and aggravated battery, in the death of his girlfriend's nine-month-old daughter Masiah Copeland. He now appeals, challenging the sufficiency of the evidence. For the following reasons, we affirm.[1]

---

[1] The crimes occurred in April 2012. On July 17, 2012, a Fulton County grand jury indicted Bennett on charges of malice murder, felony murder, cruelty to children in the first degree, aggravated assault, and aggravated battery. The jury found Bennett guilty on all counts following a January 2014 trial. He was sentenced to life in prison for malice murder, 20 consecutive years on one count of aggravated assault, and various concurrent terms of years on additional aggravated assault and cruelty to children counts. The felony murder counts were vacated by operation of law, and the remaining counts were merged. See Malcolm v. State, 263 Ga. 369, 372-373 (4), (5) (434 SE2d 479) (1993). Bennett's motion for new trial was filed on February 6, 2014, amended by new counsel on November 13, 2015, and denied on September 16, 2016. His notice of appeal was filed on September 29, 2016. This case was docketed in this Court for the April 2017 term and submitted for a decision on the briefs.

Viewed in the light most favorable to the verdict, Masiah's mother, Cella Copeland, dated Bennett and lived with him and his mother Hetty Bennett. Copeland moved in with Bennett when she was three months pregnant with Masiah. At some point she moved out of the Bennett home, returned when Masiah was six months old, moved out again, and again returned to the home when the child was eight months old. Copeland explained that Bennett would help her take care of Masiah, and that Hetty also assisted, but to a lesser extent. Copeland testified that on one occasion when Masiah would not sleep, Bennett told her that Masiah was "defective. We should put her in a bag with some rocks and just throw her in the river." When Copeland became upset, Bennett told her he was joking. Copeland stated that on another occasion, about one month before Masiah's death, Bennett laid the child on her back and put his leg over her arms and turned her head in order to administer the child's ear infection medicine.

A day before Masiah's death, she was on a body pillow and could not breathe. Bennett "freaked out, and he snatched her up." Copeland asked Bennett why Masiah's arm was swollen, and Bennett told her that "it's probably just sprung." After this incident, Copeland could tell that something was wrong with

2

Masiah, who screamed whenever she was near Bennett, but Hetty and Bennett's brother told her not to call 911. Hetty gave Masiah some Tylenol and put something on her arm she claimed would stop the pain.

The next day, Bennett took Masiah to feed her so that Copeland, who was not feeling well, could rest. He then put the child down for a nap while Copeland went into another room to sleep. At some point Hetty came home, and she, Bennett and Copeland went out to the porch before it was discovered that Masiah was not breathing. When emergency personnel arrived at the home, they took Masiah from Bennett who carried her outside. She had no pulse, her right eye was bloodshot, and her body was limp. Bennett told a paramedic and an officer that he had checked on Masiah 30 minutes earlier and she was fine, and Copeland and Bennett both told a detective that she had an "asthma condition." Emergency personnel attempted to resuscitate Masiah, but they were unsuccessful, and transported her to a hospital. When Copeland asked Bennett if he was coming to the hospital, he responded that he was going to smoke marijuana.

An investigator with the medical examiner's office testified that when he arrived at the hospital less than two hours later, he noticed that Masiah's right

arm was swollen and "looked twice as big as the other arm," and that "there was blood, like a hemorrhage" in one eye. A medical examiner testified that Masiah had two broken legs, two broken bones in her right forearm, a broken left arm, a number of contusions over her eyebrows and behind her right ear, a number of hemorrhages in her scalp, subdural hemorrhage in her brain, subarachnoid hemorrhage around her brain, a hemorrhage in her right eye, and contusions to her lower back, the right side of her chest, and on the bridge of her nose. She had a laceration between her lip and gums that was consistent with someone striking her in the face or her face striking an object. The fractures to Masiah's right arm had occurred within the week of her death while the fracture to her left arm was one to three weeks old. The fractures to her legs were in the healing stage and had also likely occurred many days before her death. The medical examiner concluded that the cause of Masiah's death was blunt force injuries to her head and extremities, with the bleeding in her brain causing her organs to shut down and stop her breathing.

Bennett willingly spoke with officers. When asked about the injury to Masiah's swollen arm, he initially offered police the possibility that her arm was injured from falling off the bed. At a later time, he told police that she could

4

have fallen out of her car seat, and at another point said that Masiah's arm was injured when he tripped over a laundry basket while holding her. At yet another point, Bennett explained that when he found Masiah not breathing, he "snatched the child up," and suggested that may have caused the injury to her arm. He explained that he felt her arm snap, but did not think it was broken. His explanation to police as to how Masiah's legs had been broken was that Masiah had been constipated and on the advice of Hetty, he "plac[ed] the child's legs Indian-style, crossed, and then press[ed] them into her chest, which would force Masiah . . . to have a bowel movement." Hetty told police that she knew that Masiah's arm was injured, and that she told Copeland and Bennett "to take the child to the hospital, but they didn't." Copeland testified that she "ha[d] no clue" as to how Masiah's arms and legs had been broken, but that Bennett told her an injury to Masiah's head was from her falling off the bed.

The medical examiner concluded that Masiah's injuries did not likely occur the way Bennett described. A pediatrician who had treated Masiah on several occasions, testified that in her experience, generally a nine-month-old's arms are flexible and difficult to break, and that if a child that age had a broken limb, the child would likely be in "constant, horrid pain."

5

A forensic psychologist testified that Bennett told him he had used methamphetamine the day before Masiah's death, and that he used that drug and marijuana nearly every day. The psychologist explained that the use of methamphetamine can cause paranoia, memory loss, and violent behavior, and affect adaptive functioning.

Following the presentation of this evidence, the jury found Bennett guilty on all counts.[2]

1. Bennett contends that the evidence outlined above was insufficient to sustain his convictions because it did not exclude the reasonable hypothesis that Copeland committed the crimes. He argues that Copeland never possessed the capacity or desire to care for Masiah, began abusing and neglecting the child shortly after her birth and long before moving in with him and his mother, and had a motive to protect herself from prosecution for the child's murder. Bennett complains further that the evidence against him came entirely from Copeland.

"To warrant a conviction on circumstantial evidence, the proved facts

---

[2] Bennett and his mother Hetty were tried together. The trial court directed a verdict on 17 of the counts against Hetty. Of the remaining counts, the jury acquitted Hetty of felony murder, but found her guilty on multiple counts of either first or second degree cruelty to children. The case against Copeland was severed, and she ultimately pled guilty to two counts of cruelty to children in the first degree after testifying at Bennett and Hetty's trial.

shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6.[3] And we have held that

> not every hypothesis is a reasonable one, and the evidence need not exclude every *conceivable* inference or hypothesis — only those that are reasonable. Whether an alternative hypothesis raised by the defendant is "reasonable" is a question committed principally to the jury, and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of the guilt of the accused, we will not disturb that finding unless it is insupportable as a matter of law.

(Citations and punctuation omitted; emphasis in original.) Gibson v. State, 300 Ga. 494, 495 (1) (796 SE2d 712) (2017).

Here, evidence of Bennett's almost daily drug use that could result in violent behavior, that he was alone with Masiah just before her death, that he presented multiple explanations for how he likely caused some of her prior injuries, as well as his behavior after emergency personnel arrived, was sufficient for the jury to find that he inflicted Masiah's prior injuries as well as the injuries that caused her death. See, e.g., Smiley v. State, 300 Ga. 582, 586 (1) (797 SE2d 472) (2017). The jury was authorized to reject Bennett's

---

[3] Bennett was tried after the January 1, 2013 effective date of the new Evidence Code.

7

hypothesis that Copeland caused Masiah's death as "[i]t was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (Citation and punctuation omitted.) <u>Gomez v. State</u>, 301 Ga. 445, 452-453 (3) (801 SE2d 847) (2017). We therefore conclude that the evidence presented was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Bennett was guilty of the crimes for which he was convicted. See <u>Jackson v. Virginia</u>, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Bennett argues that the State presented insufficient evidence to sustain Count 4 of the indictment — felony murder predicated on cruelty to children in the first degree. But as explained in note 1, supra, the felony murder counts were vacated by operation of law.[4] His sufficiency argument is therefore moot. See <u>Anderson v. State</u>, 299 Ga. 193, 196 (1) n. 4 (787 SE2d 202) (2016); <u>Mills v. State</u>, 287 Ga. 828, 830 (2) (700 SE2d 544) (2010).

<u>Judgment affirmed. All the Justices concur.</u>

---

[4] Count 4 alleged that Bennett committed felony murder during the commission of cruelty to children in the first degree as alleged in Count 7. But only Hetty was charged in Count 7. Bennett concedes that he failed to file a timely demurrer to Count 4 on this ground and that therefore this issue is not properly before this Court. See <u>Strozier v. State</u>, 277 Ga. 78, 80 (3) (586 SE2d 309) (2003); <u>Fouts v. State</u>, 322 Ga. App. 261, 263 (1) (744 SE2d 451) (2013).

8

Decided August 28, 2017.

Murder. Fulton Superior Court. Before Judge Adams.

<u>Tyler R. Conklin</u>, for appellant.

<u>Paul L. Howard, Jr., District Attorney, Kevin C. Armstrong, Lyndsey H. Rudder, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General</u>, for appellee.