302 Ga. 750

FINAL COPY

S17A0948. LEBIS v. THE STATE.

GRANT, Justice.

Following a jury trial, Lisa Ann Lebis appeals her convictions of felony murder and other crimes related to the shooting death of Officer Sean Callahan.[1] Lebis contends that the evidence was insufficient to support the verdict with regard to a number of counts against her and that trial counsel rendered ineffective assistance in the case. For the reasons set forth below, we affirm in part and reverse in part—affirming Lebis's convictions of two of the misdemeanor obstruction counts, all of the counts regarding possession of

[1] On June 19, 2013, Lebis was indicted for the felony murder of Officer Callahan predicated on the felony of possession, as a party to the crime, of a firearm by a convicted felon; two counts of disorderly conduct; second degree criminal damage to property; four counts of misdemeanor obstruction of a police officer; one count of felony obstruction of a police officer; one count of simple battery; one count of theft by receiving stolen property; two counts of possession of a dangerous weapon; and three counts of possession of a firearm by a convicted felon. Following a jury trial, Lebis was found guilty of felony murder, criminal trespass to property as a lesser included offense of criminal damage to property, all five counts of obstruction, simple battery, all counts of possession of a dangerous weapon, and all counts of possession of a firearm by a convicted felon. Lebis was acquitted of the remaining counts of the indictment. The trial court sentenced Lebis to life imprisonment for felony murder, twelve months for criminal trespass to run consecutively to felony murder, twelve months to serve for each of the four counts of misdemeanor obstruction consecutive to each other and to criminal trespass, five years for felony obstruction consecutive to the misdemeanor obstruction counts, five years for each possession of a dangerous weapon count to run consecutively to each other and the count of felony obstruction, and five years for each count of possession of a firearm by a convicted felon to run consecutively to each other and to the counts of possession of a dangerous weapon. The count of simple battery was merged with felony obstruction for purposes of sentencing. On March 4, 2014, Lebis filed a motion for new trial and amended it on January 12, 2016. On May 20, 2016, the trial court denied the motion for new trial. On June 6, 2016, Lebis timely filed a notice of appeal, and her case was assigned to the April 2017 term of this Court. The case was orally argued on August 14, 2017.

firearms and dangerous weapons, and of felony murder; but reversing her conviction of the other two misdemeanor obstructions.

## I.

Viewed in the light most favorable to the verdict, the record shows that Lebis and her husband, Tremaine, had been staying in a rented motel room near their home for eight days, but they were asked to vacate the room after failure to pay. Lebis cursed at motel staff, who called 911 to report Lebis's unruly behavior. Shortly thereafter, Officer Waymondo Brown and Officer Callahan arrived to investigate. After talking to motel staff, they proceeded to Lebis's room, where they discovered Lebis and Tremaine moving items into the motel breezeway. Officer Brown asked them to stop what they were doing, and he discovered that the room that they had been staying in was severely soiled and damaged. After inspecting the motel room, Officer Brown walked out and gave a hand signal to Officer Callahan to indicate that they were going to place Lebis and Tremaine under arrest. Officer Brown did not see the fanny pack that Tremaine was wearing at that time, and neither officer knew that Tremaine was carrying a handgun in the fanny pack.

Officer Brown grabbed Tremaine's right arm and told Tremaine to put his left arm behind his back and keep it there. Lebis became irate, and started yelling very loudly at Officer Brown to leave Tremaine alone. Officer Brown testified that Lebis's screaming was "not assisting" with the execution of the arrest. Tremaine struggled, was ultimately tasered without full effect, and broke free and ran behind the motel. Officers Brown and Callahan pursued, with Officer Callahan in the lead. During the pursuit, Tremaine pulled his gun, a .357 caliber Glock, from the fanny pack and began shooting, fatally wounding Officer Callahan. Officer Brown returned fire, killing Tremaine. Officer Brown ran to Tremaine, kicked away his gun, and went to assist Officer Callahan, who had fallen over a retaining wall.

Officer Brown tried to move Officer Callahan, but was unable to do so. Instead, he began to administer CPR, which he continued to do for approximately two minutes. At that point, Lebis appeared at the top of the retaining wall and started yelling at Officer Brown, asking him if he killed her husband. At that moment, Officer Brown realized that he had not secured Tremaine's weapon, making him vulnerable. Officer Brown pointed his gun at Lebis with one hand while trying to maintain pressure on Officer Callahan's gunshot wound with the other. Officer Brown yelled at Lebis

3

repeatedly until she showed him her hands so he could see that she was unarmed. Officer Brown then resumed CPR on Officer Callahan.

In response to an emergency alert sent by Officer Brown, Officer Alex Frazier next reported to the scene and found Lebis, who had come back from behind the building, standing next to the patrol cars parked in front of the motel. Officer Frazier pointed his firearm at Lebis and ordered her to show him her hands. At the time, she was talking on a cell phone, with one hand holding the cell phone and the other down by her pocket area. Lebis did not comply with Officer Frazier's commands. Instead, she began to move in his direction. Officer Frazier instructed Lebis to get on the ground, but she did not comply and kept advancing. Another officer, who had then arrived at the scene, approached Lebis from behind, took her to the ground, and restrained her. Later, Officer Joshua Waites arrived on the scene. By that time, Lebis was being held in the back of a patrol car. Officer Waites opened the door in an attempt to search Lebis for weapons, and she started kicking him wildly.

Numerous dangerous weapons and firearms were recovered from the scene. The weapon that Tremaine used to shoot Officer Callahan was a modified .357 caliber Glock handgun. The following guns and ammunition

4

were removed from the motel room shared by Lebis and Tremaine: a shotgun, a modified 9mm handgun, 20 live rounds of .357 Winchester ammunition, 30 live rounds of 9mm ammunition, and 16 shotgun shells. Additional weaponry taken from the motel room included harpoon-like rocket motors with attached razor tips, a homemade silencer, a razor blade, two knives, a laser scope, and a homemade bandolier for shotgun shells. The weapons were found inside boxes and luggage, with some wrapped in clothing and several others in plain view. When interviewed by police after Officer Callahan's shooting, Lebis admitted that she knew that Tremaine carried a gun in his fanny pack during his flight from police, but she denied knowledge of the other weapons in the motel room. She did admit that she knew the person from whom Tremaine purchased weapons.

With regard to the convictions Lebis does not challenge in this appeal,[2] the evidence was sufficient to enable a jury to find her guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). As for the convictions Lebis does challenge, we consider each one in turn.

---

[2] These counts include criminal damage to property, felony obstruction of a police officer, and simple battery.

## II.

Lebis's challenge to her convictions of all five possession counts and of felony murder are interrelated because the felony murder charge's predicate felony was the alleged possession of a firearm—the murder weapon—by a convicted felon. Lebis contends that there was insufficient evidence to support her convictions on Counts XII and XIII charging her with possession of dangerous weapons and on Counts XIV, XV, and XVI charging her with possession of firearms by a convicted felon. The possession counts all concerned the various weapons and firearms recovered after the murder, which occurred when Tremaine fled from the motel room he and Lebis shared for eight days. Lebis also argues that the evidence was insufficient to support her conviction, as a party to the crime, of felony murder predicated on possession of the weapon Tremaine pulled from his fanny pack at the time of the killing. We find that the evidence was sufficient to support Lebis's convictions on all of these counts.

Before turning back to the facts of this case, some background is appropriate. It is true that "[p]ossession of contraband may be joint or exclusive, and actual or constructive." *In the Interest of D. H.,* 285 Ga. 51, 52 (1) (673 SE2d 191) (2009) (punctuation omitted). Actual possession

means knowing, direct physical control over something at a given time. Id. For constructive possession, the standard is also well-understood: if a person has both the "power and the intention at a given time to exercise dominion or control" over a thing, then the person is in constructive possession of that thing. *State v. Lewis*, 249 Ga. 565, 567 (292 SE2d 667) (1982); *Jones v. State*, 339 Ga. App. 95, 98 (1) (a) (791 SE2d 625) (2016); *Holiman v. State*, 313 Ga. App. 76, 78 (1) (720 SE2d 363) (2011) ("A person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion and control over a thing is then in constructive possession of it.") (citation and punctuation omitted); *Murray v. State*, 309 Ga. App. 828, 830 (711 SE2d 387) (2011) (applying same standard to possession of a weapon). Mere proximity to contraband, absent other evidence connecting a suspect with that contraband, is not enough to establish constructive possession. *Mitchell v. State*, 268 Ga. 592 (492 SE2d 204) (1997). If one person alone has actual or constructive possession of a thing, then the person is in sole possession of it. *Lewis*, 249 Ga. at 567. If two or more people share actual or constructive possession of a thing, then their possession is joint. Id.

Constructive possession can be proven—and very often is proven—by circumstantial evidence. See *Holiman*, 313 Ga. App. at 80 (1) (b). Of course, as with any charge based on purely circumstantial evidence, in order to support a conviction "the evidence must exclude every reasonable hypothesis, save that of constructive possession by the defendant." Id.; see also *Smiley v. State*, 300 Ga. 582, 586 (1) (797 SE2d 472) (2017) (citing OCGA § 24-14-6 (2013)). As we have noted, proximity to contraband is plainly not enough. *Stacey v. State*, 292 Ga. 838, 840 (1) (a) (741 SE2d 881) (2013). But as this Court has also held, consistent with OCGA § 24-14-6, "questions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and . . . that finding will not be disturbed unless the verdict of guilty is unsupportable as a matter of law." *Robbins v. State*, 269 Ga. 500, 501 (1) (499 SE2d 323) (1998); see also *Dixon v. State*, 298 Ga. 200, 202 (1) (779 SE2d 290) (2015). In other words,

> whether the evidence shows something more than mere presence or proximity, and whether it excludes every other reasonable hypothesis, are questions committed principally to the trier of fact, and we [should] not disturb the decisions of the trier of fact

about these things unless they cannot be supported as a matter of law.

*Holiman*, 313 Ga. App. at 80 (1) (b).

A.  Giving appropriate deference to the factfinder's assessment of the weight and credibility of the evidence, the direct evidence shows that Lebis had been cohabitating with Tremaine in proximity with the five weapons that she was convicted of possessing.  But the circumstantial evidence shows far more, and the jury's evaluation of the totality of the evidence should be respected.

The evidence introduced at trial plainly supports the inference that Lebis and her husband Tremaine were prepared to resist arrest with firearms and other dangerous weapons in the event that they were detected at the motel. The jury heard and saw evidence that the couple, along with their three dogs, occupied a small motel room for eight days prior to the crimes in order to evade the husband's arrest. Lebis gave a variety of unsupportable answers when asked why she and her husband had stayed in the tiny room rather than in their nearby home.  Lebis was the one who procured money—cash only—to pay for their stay at the motel.  The room was registered in the name of Lebis's son, although he never stayed there, and

9

was only listed as having a single occupant. And Lebis herself was the only one who communicated with motel staff; in fact, staff were surprised to find her husband Tremaine in the room when they entered to check its condition. Lebis was clear with police officers investigating the crimes after the fact that Tremaine had told her that he was never going back to prison. The ready inference from these facts is that Lebis did not want anyone to know that her husband was at the motel because there was a warrant out for his arrest. See *Whaley v. State*, 337 Ga. App. 50, 55-56 (2) (785 SE2d 685) (2016) (relying on fact that two individuals had acted in concert on the night of the crime to support finding of constructive possession).

The evidence presented regarding the state of the room shared by Lebis and her husband further supports the jury's finding of constructive possession. The pair's belongings were intermixed in the room and outside of the room; Lebis herself repeatedly explained to investigators that she and her husband were in the process of getting "our stuff" out of the motel room when police came. Lebis's references to "our stuff" goes beyond admitting mere control of the premises, and the jury may well have taken her comments as an admission of control of the contraband itself. Cf. *Holiman*, 313 Ga. App. at 81 (1) (b) (because defendant referred to apartment as "our house," a

"rational trier of fact might take this reference as an admission of his control of the premises" as well as a presumption of possession). Motel management also testified that Lebis stated that her life was in that room. In addition, the jury was shown multiple pictures of the weapons and bags inside the room. Those photographs show the small size of the room and the close proximity in which Lebis and her husband were living. That too supports the jury's conclusion that Lebis was guilty of constructive possession. See *Stacey*, 292 Ga. at 840 (1) (a) (recognizing rebuttable presumption of joint possession of contraband found in a bedroom between parties who live together in that same bedroom); see also *Mantooth v. State*, 335 Ga. App. 734, 736 (1) (a) (783 SE2d 133) (2016) (evidence that defendant was "more than merely present" in apartment where firearm was found supported finding of constructive possession); *Jones*, 339 Ga. App. at 99 & n.17 (evidence that defendant had control over residence supported jury's finding of constructive possession).

The photographs also show that some of the weapons were contained in clear plastic boxes or otherwise highly visible. For example, there was testimony and photographic evidence that the barrel of a shotgun was visible and sticking out from one of the bags. An empty long gun case was pulled

11

out from under the sole bed in the room. Some of the weapons were found on the top of the crate for the dogs that Lebis and her husband owned and kept with them in the small room. See *Stacey*, 292 Ga. at 840 (1) (a) (plain view of contraband supports finding of constructive possession); *Whaley*, 337 Ga. App. at 56 (2) (presence of contraband in plain sight supported finding of joint possession, as did circumstantial evidence of equal access); *Holiman*, 313 Ga. App. at 81 (1) (b) (same). In fact, one handgun had been acquired and extensively modified during the eight-day period that Lebis and her husband were staying in the small room.

Officers stated that nothing about any of the items in the room indicated that they were in the sole possession of a particular person. Moreover, in spite of the small size of the room, the fact that the couple's belongings were intermixed, and the fact that many of the weapons were in plain sight in the room, Lebis (rather implausibly) denied that she was aware that they were there. Lebis eventually confessed that she knew about at least one weapon, and the jury watched a video recording of her explaining to an investigator that her husband carried a gun inside his fanny pack that he had modified because he was in the military and "he did all kinds of stuff like that." She was able to draw a picture of the gun when asked and she

12

described the scope and the "little packs for extra ammo." The shifting narrative from Lebis regarding her knowledge of the items in the room, as well as her reasons for living there instead of in her own home could also support an inference by the jury that she exercised dominion over the weapons. Cf. *Maddox v. State*, 322 Ga. App. 811, 814 (1) (746 SE2d 280) (2013) (giving false name to officers among the factors supporting constructive possession finding). Indeed, the jury heard that Lebis knew her husband owned guns, knew who he bought them from and where he bought them, and that she had previously attempted to conceal the presence of firearms in the home she shared with her husband after he shot himself in the hand with a gun he illegally owned. That evidence too supports the jury's verdict on constructive possession. See *Stacey*, 292 Ga. at 840 (1) (a) (defendant's admission that he was aware of roommate's drug sales supported constructive possession finding).

Significant evidence, therefore, connects Lebis to the weapons in the motel room. The State was not required to show that Lebis solely or actually possessed the weapons at any point. Nor was it required to offer direct evidence that she possessed them. Instead, the State had to put forward enough evidence so that a properly-instructed jury could reasonably conclude

that Lebis at least jointly and constructively possessed the weapons in her motel room. The State did just that. As in *Holiman*, the circumstantial evidence in this case shows a connection between Lebis and the weapons in her motel room "beyond mere presence and spatial proximity, *or at least a rational trier of fact could find that it does*." 313 Ga. App. at 83 (1) (b) (emphasis supplied). Accordingly, we find that there was sufficient evidence to support the jury's verdict on the constructive possession charges in this case, and we affirm her convictions of those crimes.

B. The evidence was also sufficient to support the jury's verdict that Lebis was guilty of felony murder as a party to her husband's possession of a firearm as a convicted felon—a criminal act that proximately caused the death of Officer Callahan. See, e.g., *Metts v. State*, 270 Ga. 481, 482 (511 SE2d 508) (1999) ("Appellant's possession of the firearm was dangerous and life-threatening, and had 'an undeniable connection to the homicide.'") (citation and punctuation omitted). Lebis argued at trial and before this Court that she could not be convicted of felony murder because she was not in possession of the gun with which Officer Callahan was killed at the time he was shot. But her argument misunderstands the party-to-a-crime doctrine; because the jury had sufficient evidence to conclude that she was a party to

14

her husband's crime of possessing a firearm as a convicted felon, and because that crime was the proximate cause of Officer Callahan's death, Lebis is accountable.

In order to understand why this is so, we again recount some of the facts of the crime. At the time that Tremaine shot Officer Callahan, the evidence shows that Tremaine, not Lebis, had actual and sole possession of the .357 caliber Glock that he pulled from the fanny pack he wore. It is true that a person who knowingly has direct physical control over a thing at a given time is in actual possession of it. See *In the Interest of D. H.*, 285 Ga. at 52. Constructive possession, on the other hand, requires that a person who does not have physical control of a thing does have both the "power and the intention at a given time to exercise dominion or control" over it. *Lewis*, 249 Ga. at 567; *Jones*, 339 Ga. App. at 98 (1) (a). If two or more people share possession of a thing, then their possession is joint, but if, as here, one person alone has possession of a thing, then the person is in sole possession of it. See *Lewis*, 249 Ga. at 567. In the view of Lebis, this is enough to clear her of the crime of felony murder. She notes that Tremaine had left the motel room at the time of the shooting, and indeed there is no evidence that Lebis had the intention or ability to exercise control over the murder weapon at that point.

15

But that does not mean that she was not responsible, as a party to the crime, for the actions taken by her husband; that is, she did not need to have had actual or even constructive possession of the handgun in order to be responsible for the killing of Officer Callahan.

Can parties to a crime be guilty of illegal possession of a weapon even when they themselves exercise no physical control over the weapon, or even potential access to the weapon? Both the Court of Appeals and this Court have, in the past, reached the right answer on that question, albeit for the wrong reason. The Court of Appeals has held that because the act of one conspirator is the act of all co-conspirators, a defendant may constructively possess a firearm at the time that a co-conspirator alone actually possessed and used it in the execution or furtherance of the conspiracy. See *Davis v. State*, 287 Ga. App. 783, 785 (1) (653 SE2d 107) (2007) (citing *Moses v. State*, 265 Ga. App. 203, 213 (6) (c) (593 SE2d 372) (2004)). And this Court has held likewise. See *Aikens v. State*, 297 Ga. 229, 230 (1) (773 SE2d 229) (2015). But we read those cases as ones that should have instead determined that a defendant can be held responsible for the actions of another as a party to the crime or as a co-conspirator, without also concluding that the defendant constructively possessed the contraband actually and solely

possessed by another. So even though Lebis did not jointly possess that firearm with Tremaine at the moment of the murder, it remains true that she can be held to account for the actions of another—here, her husband—as a party to the crime or as a co-conspirator. Accordingly, her arguments that she did not constructively possess the firearm do not help her escape responsibility for the crime.

That is because Tremaine's possession of the firearm as a convicted felon was the proximate cause of Officer Callahan's shooting—"'(t)hat which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces injury, and without which the result would not have occurred.'" Black's Law Dictionary 1103 (5th ed. 1979) (cited in *State v. Jackson*, 287 Ga. 646, 648 (697 SE2d 757) (2010)). As we explained in *Jackson*, proximate cause for murder exists if "the felony the defendants committed 'directly and materially contributed to the happening of a subsequent accruing immediate cause of death.'" 287 Ga. at 652 (citation omitted).

It is plain enough that the shooting would not have happened but for Tremaine's possession of the firearm. And, as noted above, the jury had

sufficient evidence before it to conclude that Lebis and Tremaine had together hidden out in the motel room with a stockpile of weapons in order to escape or defend against Tremaine's arrest. Indeed, when "the crimes 'involve relatives, slight circumstances can support the inference that the parties colluded.'" *Teasley v. State*, 288 Ga. 468, 469 (704 SE2d 800) (2011) (quoting *Adamson v. State*, 238 Ga. App. 105, 106 (516 SE2d 310) (1999)); see also *Dublin v. State*, 302 Ga. 60, 65 (3) (805 SE2d 27) (2017) ("Whether a person was a party to a crime can be inferred from his presence, companionship, and conduct before and after the crime was committed.") (citation and punctuation omitted). Lebis also argues that "even if there had been previous joint ownership," her husband's act of fleeing from officers "constitute[d] a superseding intervening variable," severing her responsibility for his actions. It did not. In fact, the flight from the officers appears to be entirely consistent with the shared purpose of Lebis and Tremaine. The jury had sufficient evidence to conclude that Tremaine's possession of the firearm at the time he shot the officer was a part of their scheme; indeed, that was the theory the State set before the jury, which received instructions on conspiracy and party-to-a-crime in addition to the substantive instructions related to the

specific offenses charged.[3]  In short, because the jury could have reasonably concluded that Lebis was a party to the crime of her husband's possession of the firearm, she also bears responsibility for the consequences of that crime.

Although Lebis raised sufficiency of the evidence rather than a "fatal variance" between the language of the indictment, which charged joint possession, and the proof at trial, we also note that any suggestion of such a fatal variance would also fail.  "Our courts no longer employ an overly technical application of the fatal variance rule, focusing instead on materiality.  The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused." *Roscoe v. State*, 288 Ga. 775, 776 (3) (707 SE2d 90) (2011) (quoting *Delacruz v. State*, 280 Ga. 392, 396 (3) (627 SE2d 579) (2006)).  A variance, in turn, is only fatal if: (1) the allegations fail to "definitely inform the accused as to the charges against him so as to enable him to present his defense and not be taken by surprise," and (2) the

---

[3] Although useful in demonstrating that Lebis was aware of the nature of the charges against her, it was not necessary for the indictment to charge Lebis with being a party to the crime in order to prove her culpability in that manner.  See *Butler v. State*, 273 Ga. 380, 384 (541 SE2d 653) (2001); see also *Davis v. State*, 287 Ga. App. 786, 787 (653 SE2d 104) (2001) (finding no fatal variance even where defendant not charged as party to a crime).

allegations are not "adequate to protect the accused against another prosecution for the same offense." Id.

As prior cases in this Court and the Court of Appeals show, no fatal variance existed here between the evidence and the indictment. In the factually similar case of *Davis v. State*, 287 Ga. App. 786 (653 SE2d 104) (2007), the accused argued that "because the indictment charged him with possession of a firearm 'on his person,' it varied fatally from the evidence presented at trial that the other perpetrator actually possessed the handgun." Id. at 787. The Court of Appeals rejected that argument, properly noting that although the evidence may not have shown the accused "was in physical possession" of the firearm during the underlying crime, the evidence "authorized a finding that he was a party to the crime and that he and his co-defendants were joint conspirators. The act of either was the act of the other and each is as fully responsible for the act of the other as if he had committed that act." Id. And in *Roscoe*, we affirmed the defendant's conviction of possession of a firearm by a convicted felon, even assuming that the underlying felony conviction used by the State was a variance from the allegations in the indictment; because the indictment sufficiently informed the accused of the charges against him, he failed to show that he was unable

20

to present a viable defense or that he was surprised at trial. 288 Ga. at 776 (3). The same is true here.

In sum, because the evidence presented at trial was sufficient to prove that Lebis was guilty of felony murder, we affirm her conviction of this crime.

## III.

Lebis was found guilty of four misdemeanor counts of obstructing a police officer, and she challenges the sufficiency of the evidence supporting each of them. "A person commits the offense of obstruction of an officer when he knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties. Flight after a lawful command to halt constitutes obstruction of an officer." *Cofield v. State*, 304 Ga. App. 165, 168 (695 SE2d 696) (2010) (citing OCGA § 16-10-24 (a)). As to two of the misdemeanor obstruction convictions that Lebis challenges—her alleged obstruction of Officers Brown and Callahan in their attempt to arrest Tremaine, as charged in Counts V and VI of the indictment—we agree that the evidence was insufficient to support those convictions; as to the other two misdemeanor obstruction convictions that she challenges—her alleged obstruction of Officer Brown in his attempt to

21

perform life-saving efforts on Officer Callahan, as charged in Count VII of the indictment, and her alleged obstruction of Officer Frazier by refusing to comply with his lawful commands during the incident, as charged in Count VIII of the indictment—we disagree with Lebis and find that the evidence was sufficient to support those convictions.

A.  At trial, Officer Brown testified that Lebis repeatedly yelled, "Leave him alone," when he and Officer Callahan were attempting to handcuff Tremaine.  When asked about the effect of Lebis's screaming, Officer Brown testified that it was "not assisting" with the arrest of Tremaine.  He did not testify, however, and the evidence did not show, that Lebis intentionally hindered the arrest by her protestations. And there was no evidence that Lebis refused or failed to comply with any directives from either officer at this time.

Under certain circumstances, words alone can constitute obstruction. See *Stryker v. State*, 297 Ga. App. 493, 495-496 (677 SE2d 680) (2009). This case, however, is different than those in which our courts have found obstruction based solely on words or remonstrations. Misdemeanor obstruction convictions based on a defendant's words have survived appellate review where the defendant's words affirmatively interfered with the

22

officers' actions. *Harris v. State*, 314 Ga. App. 816, 820-821 (726 SE2d 455) (2012). In those cases, the defendant: instructed someone to remove evidence from a crime scene; refused to leave a scene and yelled so loudly so as to interfere with an officer's ability to conduct a witness interview; deliberately misled an officer about the defendant's identity; lied to officers about the whereabouts of suspects; and deliberately misled a responding officer about the defendant's role in a car wreck. See id. (gathering cases).

The fact that Lebis was "not assisting" with the arrest in this case when she yelled at officers to leave Tremaine alone, without anything more, did not rise to the level of obstruction, and so her convictions for obstruction under Counts V and VI of the indictment must be reversed.

B. Lebis next contends that the evidence was insufficient to support her obstruction conviction for "hinder[ing Officer] Brown . . . by diverting [his] attention from performing life saving efforts on wounded Officer Sean Callahan."[4] For this count of obstruction, the evidence does indicate that Lebis failed to immediately comply with Officer Brown's directive to show him her hands so that he could determine that she was not carrying a weapon. Accordingly, there was evidence supporting the jury's finding that Lebis

---

[4] This charge is set forth in Count VII of the indictment.

committed obstruction when she failed to comply with an officer's lawful command and hindered him in the performance of his duties.  We affirm that conviction.

C.  Lebis also maintains that the evidence was insufficient to support her conviction for "obstruct[ing Officer] Alex Frazier . . . by refusing to comply with his commands to stop moving and get on the ground, while officers were investigating a police involved shooting."[5]  Here, the record shows that, despite Officer Frazier's repeated requests to put away her cell phone, stop walking toward him, and show him her hands, Lebis deliberately and intentionally disobeyed his lawful requests. In fact, there is evidence that Lebis actively approached Officer Frazier to the extent that the other officer was required to take Lebis to the ground. The evidence was sufficient to support this count of obstruction, and we affirm it as well.

IV.

Lebis contends that trial counsel rendered ineffective assistance by failing to (a) request that opening and closing arguments be transcribed and (b) procure an expert to testify that the short time that Lebis distracted

---

[5]  This charge is set forth in Count VIII of the indictment.

Officer Brown from providing life-saving procedures to Officer Callahan did not contribute to his death. We disagree.

To prevail on an ineffective assistance of counsel claim, the defendant must satisfy the familiar standard set out in *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). Under the *Strickland* standard, a defendant must prove both that the performance of his lawyer was deficient and that he was prejudiced by the deficient performance. *Mims v. State*, 299 Ga. 578, 579-580 (787 SE2d 237) (2016). If an appellant fails to satisfy either prong of the *Strickland* test, the other prong need not be examined, and in reviewing the trial court's decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.'" *Wright v. State*, 291 Ga. 869, 870 (734 SE2d 876) (2012) (quoting *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003)).

First, Lebis fails to make an adequate showing as to why trial counsel's decision not to request that opening statements and closing arguments be transcribed may have harmed her. As such, she has made no showing of

prejudice at all, and this claim of ineffective assistance necessarily fails. *Wright*, 291 Ga. at 870 (2).

Lebis next contends that trial counsel rendered ineffective assistance by failing to procure an expert to testify that Lebis's obstruction of Officer Brown as he attempted to provide life-saving procedures to Officer Callahan did not contribute to Officer Callahan's death. The State was not required, however, to prove that Lebis's obstruction actually contributed to Officer Callahan's death, but merely to prove that Lebis hindered Officer Brown's performance of life-saving efforts. Accordingly, this asserted ground of ineffective assistance is meritless and fails.

Because we have reversed Lebis's convictions of two misdemeanor obstruction counts, and affirmed the other convictions, we remand this case to the trial court for resentencing.

Judgment affirmed in part and reversed in part, and case remanded for resentencing. All the Justices concur, except Melton, P. J., who concurs fully in Divisions I, III, and IV and in judgment only in Division II.

Decided December 11, 2017 — Reconsideration denied January 16, 2018.

Murder. Clayton Superior Court. Before Judge Collier.

<u>Martin Brothers, John R. Martin, Sandra L. Michaels</u>, for appellant.

<u>Tracy Graham Lawson, District Attorney, Jeffrey M. Gore, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General</u>, for appellee.