307 Ga. 463
FINAL COPY

S19A1264.  JONES v. THE STATE.

BLACKWELL, Justice.

Demiko Santwon Jones was tried by a Fulton County jury and convicted of murder and other crimes in connection with the fatal shooting of Rodney Stafford. Jones appeals, claiming that the trial court abused its discretion when it excused a juror after deliberations were underway. We find no merit in this claim. We do agree, however, with Jones's contention that the State failed to present sufficient evidence under OCGA § 24-14-8 to establish that he was guilty of the unlawful possession of a firearm by a first-offender probationer. As a result, we reverse Jones's conviction for possession of a firearm by a first-offender probationer, but we otherwise affirm.[1]

---

[1] Stafford was killed in October 2015. A Fulton County grand jury indicted Jones and Todd Demetrius Richardson in February 2016, charging them with murder with malice aforethought, murder in the commission of a felony (aggravated assault), two counts of aggravated assault, and the

1. Viewed in the light most favorable to the verdict, the evidence shows that Jones and Stafford both sold drugs in the Pittsburgh neighborhood in southwest Atlanta. Soon after Todd Demetrius Richardson was released from prison, Jones began talking with him about robbing or extorting money from Stafford. Jones told Richardson that he would help Richardson get "stamped" into Jones's gang if Richardson assisted him with Stafford. On October 22, 2015, Jones and Richardson looked for Stafford

unlawful possession of a firearm during the commission of a felony. In addition, Jones alone was charged with the unlawful possession of a firearm by a first-offender probationer and felony murder predicated on that offense. Before Richardson entered a guilty plea, the trial court granted him immunity pursuant to OCGA § 24-5-507, and Richardson testified at Jones's trial, which was held in August and September 2016. The jury failed to reach a verdict on malice murder but found Jones guilty on all the other counts. The trial court sentenced Jones to imprisonment for life without the possibility of parole for felony murder predicated on the aggravated assault upon Stafford, a concurrent term of imprisonment for five years for an aggravated assault upon Stafford's friend (who was with Stafford when he was shot), a consecutive term of imprisonment for five years for the unlawful possession of a firearm during the commission of a felony, and a consecutive term of imprisonment for five years for the unlawful possession of a firearm by a first-offender probationer. The other count of felony murder was vacated by operation of law, and the aggravated assault upon Stafford merged into the murder. Jones timely filed a motion for new trial, which he amended in September 2018, and the trial court denied that motion in January 2019. Jones then timely filed a notice of appeal. The case was docketed in this Court for the August 2019 term and orally argued on September 12, 2019.

throughout Pittsburgh, but they failed to locate him.

The next morning, Jones drove his fiancée's car—a black Chrysler 200 with an Arizona license plate—and picked up Richardson. Soon thereafter, they saw Stafford walking with a friend. According to Richardson, Jones (who was a first-offender probationer) gave him a handgun and told him to "go ahead, go put in some work." A witness who had seen Jones "casing the neighborhood" in his fiancée's car observed Richardson emerge from the car and walk toward Stafford and his friend with a gun. Richardson engaged in a gunfight with Stafford, during which Stafford was fatally shot in the head.

Richardson fled the crime scene while talking on his cell phone, which is consistent with cell phone records that show he received a call from Jones almost immediately after the shooting. Jones drove Richardson to his cousin's house, and Jones told his cousin that Richardson had just shot a man. Jones then returned to the crime scene, where he was identified by a witness, and he texted his cousin that the man Richardson had shot was dead.

The evidence, as described herein, was sufficient under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to authorize a rational trier of fact to find beyond a reasonable doubt that Jones was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). Georgia law also provides, however, that a felony conviction cannot be sustained by the uncorroborated testimony of an accomplice. See OCGA § 24-14-8 (in "felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient"). Jones contends on appeal that the evidence is insufficient to sustain his conviction for the unlawful possession of a firearm by a first-offender probationer because the only evidence that he committed this crime came from Richardson's testimony, which was that Jones provided him with the gun and that he returned the gun to Jones after the murder.[2]

---

[2] Jones also claims that the evidence is insufficient to sustain his conviction for felony murder predicated on the unlawful possession of a firearm by a first-offender probationer. But Jones was not convicted of that offense because it was vacated by operation of law based on his conviction for felony

4

The State concedes that the only evidence that Jones *actually* possessed the gun was Richardson's testimony, and the State points to Lebis v. State, 302 Ga. 750, 758 (II) (B) (808 SE2d 724) (2017), to support its contention that Jones *constructively* possessed the gun. But we did *not* find that the appellant in Lebis was in constructive possession of the murder weapon, which her co-defendant had concealed in his fanny pack, because — as is true here — there was no evidence that the appellant "had the intention or ability to exercise control over the [gun]" that was actually possessed by the co-defendant. Id. Instead, the defendant in Lebis was found to be responsible for the illegal possession of the murder weapon—despite the fact that she had neither actual nor constructive possession of it—based on her status as a party to her co-defendant's unlawful possession of that weapon. Id. Here, the evidence showed that Jones was a party to numerous crimes committed by Richardson. But Jones was not a party to the crime of possession of a firearm by a

murder predicated on aggravated assault. As a result, this claim is moot. See Hoehn v. State, 293 Ga. 127, 130 (3) (744 SE2d 46) (2013).

first-offender probationer because no evidence was presented that Richardson had been sentenced to probation as a first offender.[3] And although OCGA § 16-2-21 allows a person to be convicted as a party to a crime even where "the person claimed to have directly committed the crime has not been prosecuted or convicted," it does require that there be proof that the crime was actually committed. As a result, we reverse Jones's conviction for the unlawful possession of a firearm by a first-offender probationer.

2. Jones claims that the trial court abused its discretion under OCGA § 15-12-172 when it excused a juror after deliberations had begun and substituted an alternate juror in her place.[4] See Ware v. State, 305 Ga. 457, 462 (3) (826 SE2d 56) (2019) (trial court may remove juror after deliberations have begun "so long as the facts presented to the court show some sound basis upon which the court

---

[3] In contrast, evidence *was* presented that Richardson unlawfully possessed a firearm during the commission of a felony, and Jones does not contend that the evidence is insufficient to convict him as a party to that crime.

[4] Jones does not claim that he was deprived of his right under the Sixth Amendment to a fair, impartial, and representative jury.

exercises its discretion to remove the juror" (citation and punctuation omitted)). Here, the trial court received a note from the juror at issue, which stated that she wanted to be excused from the jury. During a colloquy with that juror, the juror repeatedly broke down and said she was "through" deliberating. When the trial court asked if the juror was saying that she was not able to deliberate, the juror responded, "Yes, ma'am." And when the trial court conducted a colloquy with the foreperson, it appeared that the juror at issue had, indeed, stopped participating in deliberations. Under the totality of the circumstances, the trial court did not abuse its discretion when it replaced the juror with an alternate after determining, based on the words and demeanor of both the juror at issue and the foreperson, that the juror was unable to perform her duties. See Cummings v. State, 280 Ga. 831, 835 (6) (632 SE2d 152) (2006).[5]

---

[5] We note that the trial court explicitly acknowledged that it would be inappropriate to release the juror at issue merely because she was a lone holdout. See Semega v. State, 302 Ga. App. 879, 882 (1) (691 SE2d 923) (2010) (error to release juror who "had not refused to deliberate but had simply

*Judgment affirmed in part and reversed in part. All the Justices concur.*

---

reached a different decision than that of the other jurors"). Here, the juror at issue was unhappy with one of her fellow jurors who she claimed was causing "confusion" and would "jump overboard" and "shut you down" when questions were asked. But the foreperson disagreed with this assessment, and the trial court found the foreperson to be credible on this issue.

DECIDED NOVEMBER 4, 2019 --- RECONSIDERATION DENIED DECEMBER 23, 2019.

Murder. Fulton Superior Court. Before Judge Ellerbe.

*Matthew K. Winchester, Ashutosh S. Joshi*, for appellant.

*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Dustin J. Lee, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Sassano, Michael A. Oldham, Assistant Attorneys General*, for appellee.